ABNER HILL v. GEORGE W. STILL.

The whole scope of the agreement, taken in connection with the objects and acts of the parties, shows that it is entirely unlike the case of Edwards v. Atkinson, (14 Tex. R. 373,) wherein time and exact performance were the essence of the obligation.

The Court will not construe a contract so as to produce a forfeiture of a legal or equitable estate, unless that intention is plainly indicated.

It would seem that where the leading consideration of a contract to convey real

estate has been performed, a failure to perform a subordinate stipulation, part of the consideration, will not cause a rescission of the contract, but will be compensated in damages.

Where an agreement is made for an exchange of land, then resting in certificate, and the certificate of one of the parties proving to be fraudulent, (but of which it did not appear he had any knowledge at the time,)the land is located by the other party, the Court will decree a specific performance by the latter, and require the former to pay the reasonable expense of the re-location. But see the equitable circumstances in this case.

Appeal from Red River. Tried below before Hervey Dillahunty, Esq., appointed by the parties.

This suit was commenced by the appellant. The charge of the Court was as follows :

The first question for you to decide is, did the plaintiff full-fil his part of the contract, by selecting land on which to locate two-thirds of a league and labor, as he had stipulated to do ? If he made the selection in good faith, and in due time, then, according to my view of the law, he was entitled to a convey-ance of one-third of a league out of the tract to be located by the defendant ; but if the defendant failed or refused to do this, the plaintiff had a good right to put an end to his agree-ment with the defendant, and assert his right to the land he had agreed to sell him, and for which he has not been paid. You will determine from the evidence whether the plaintiff made the selection of land according to his agreement, and if he did, then by whose fault was it not located with a valid certificate, and surveyed as required by the contract. If the location failed by the fault of the defendant, then he is not entitled to the land in controversy in this suit. If it failed by the fault of the plaintiff, you should find a verdict for the de fendant.

Other charges appeared in the transcript, purporting to be asked by defendant, but it did not appear whether they were given or not.

The entry overruling the motion for a new trial read as follows :

Upon this motion and upon the hearing thereof, the defendant, George W. Still, having appeared in open Court, and offered in writing to convey the one-third of a league of land selected by the plaintiff, to said plaintiff, by good and sufficient title, and the offer being declined by the plaintiff, this motion for a new trial is overruled.

The other facts are stated in the Opinion.

*J. T. Mills* and *J. A. N. Murray*, for appellant. The Court charged the law correctly, and is fully sustained in the cases of Browning v. Estes, 3 Tex. R. 463, and 11 Id. 237; Todd v. Caldwell, 10 Id. 236; Whiteman v. Castlebuy, 8 Id. 491. All the testimony in the case shows the failure of the location to be on account of the placing thereon a fraudulent certificate, which was most surely the act of the defendant.

The new trial should have most surely been granted upon the law of the case, and the facts; and so thought the Judge, inasmuch as he makes a proposition of defendant to plaintiff the basis of his judgment as to the merits of the application. There was no offer to show that defendant had title; in fact, during the proceedings he had insisted that Joshua Hill, the plaintiff's son, had located the land included in the selection first made by plaintiff.

*S. H. Morgan*, for appellee.

ROBERTS J. This is an action to recover 1434 acres of land, a part of the headright of appellant, situated in Red River county. The facts, proven on the trial are, that in 1838 the parties entered into the following agreement:

REPUBLIC OF TEXAS, *Red River County :* Memorandum of a contract made and entered into between Abner Hill of the one part, and George W. Still of the other part, both of the county and Republic aforesaid, witnesseth, that the said Hill, for and in consideration of the obligation of the said

Hill v. Still.

Still hereafter to be expressed, has sold unto the said Still a certain tract or parcel of land containing by estimate fourteen hundred and thirty-four acres situate in Tollitt's Prairie and county of Red River, adjoining the lands of John Williams on the north, and John Johnson on the south and east, and Thompson and English on the west; and hereby binds himself, his heirs, executors, etc., in the penal sum of two thousand dollars, to make a good and sufficient title unto said Still to said land, as soon as convenient after a reasonable time allowed to obtain a grant from the Republic of Texas. This obligation to be void upon condition that the said Still should fail in performing his obligation herein expressed, otherwise to remain in full force and virtue in law.

The said Still, on his part, obligates himself to pay or settle four hundred and twenty-five dollars with John Williams, on or before the first day of January, 1839, and also to give said Hill one-third of a league of land, to be selected by said Hill; and the said Still is to be at all expense in surveying, clearing out of office, etc., and as soon as convenient after a grant can be obtained from the Republic, to make or cause to be made a good and sufficient title unto said Hill to said land. It is understood by the parties, that the third of a league herein mentioned is a claim containing two-thirds of a league and one labor, and if the selection of the land should be such that it could not be divided equal as to quality, then and in that case it is to be divided agreeable to quantity and quality, so that the said Hill is to have an equitable quantity in the proportion of one-third of a league to one-third and one labor on the other side.

In testimony whereof we have hereunto set our hands and seals this 24th day of October, 1838.

ABNER HILL, [SEAL.]<br>GEO. W. STILL, [SEAL.]

Attest:

HENRY TRIMBLE.
BENJAMIN WHEAT.

This instrument was acknowledged by both the parties in 1844, before the County Clerk of Red River county, and by him recorded ; and there is also endorsed on the back of the instrument, a receipt as follows :

Received on the within agreement, by G. W. Still's note, four hundred and twenty-five dollars, this 31st January 1839.

$425 00                              ABNER HILL.
                                     J. W. WILLIAMS.

Still went into possession of the land and has retained it until the present time. Early in 1839 there were some cabins, a tolerable good fence, and about twelve acres in cultivation (by whom the improvement was made is not stated.) Still has since put in cultivation about one hundred acres, done at various times. The rent of such land in the same neighborhood is from two to three dollars per acre. A patent was issued to Hill for the land in 1847, which was read in evidence. Cook, witness for defendant, stated that in the year 1843 or 1844, Still offered to place in the hands of Hill, certificates to be located, out of which his claim for one-third of a league should be satisfied ; he did not make a tender of the certificates, but said he had them. Hill said he had once made a selection of land, to which Still replied that if he, Hill, would remove the obstruction he had placed on the land he had selected, that he, Still, would have it legally located and surveyed. The obstruction referred to was that Hill had located the land he had selected, with certificates in the name of Joshua Hill, his son. Hill told Still that Harmon, the surveyor of Lamar county, said the land selected by Hill was subject to relocation, because the certificate by which it was located had been declared fraudulent. McLamore's certificate had been located on the land and was rejected by the traveling Board (of Commissioners) and afterwards, on the 6th of April, 1842, he filed his petition in the District Court of Red River county to establish his right to the certificate, and a final judgment rejecting two-thirds of his claim to a league

was rendered on the 28th March, 1843. It is shown that McLamore in 1838 had a certificate for two-thirds of a league and labor, which was rejected, and suit having been brought as before stated, and a verdict having been rendered against him (no judgment on it appears in the record,) he changed his petition so as to claim a third only, 7th October, 1847, renouncing his right to the two-thirds of a league and labor certificate ; on which he recovered as above stated. (The right of Still to McLamore's certificate, if he had any, does not appear.) Still further proved that he had paid the taxes upon the land, by certificate from Comptroller, dated April, 1855, which shows that Still rendered for taxes 1434 acres of the Abner Hill tract in Lamar county, from 1844 to 1853 both inclusive. And it was further shown that at the time of trial the land was worth seven or eight dollars per acre.

In December, 1846, Hill filed his petition, setting up this contract, and asking a decree of specific performance of the contract, or a rescission and for damages.

Still pleaded performance as to the payment of the money, and that he had located a certificate on the land selected by Hill, and had it surveyed, and paid for surveying, government dues, etc., and that the certificate having been rejected, Hill had located the same land, by which he had been prevented from performing the contract ; and offered to perfect the title to the land, if Hill would remove the obstruction, or to place in the hands of Hill two-thirds of a league and labor of certificates, out of which Hill could obtain his land ; and prayed for a decree of title to the land sold to him under the contract.

In 1852 Hill filed an amended petition, setting up title to the land (1434 acres) and alleging trespasses thereon by Still since October, 1848, and that praying Still be ejected and pay damages for rents and profits. At the same Term, defendant by amendment answers that he had paid the money which was the " principal consideration " in the sale of the land, and that after Hill had made the selection, he had located it himself

before Still could furnish the certificates, by which he was prevented from securing the one-third of a league so selected to Hill ; that Hill had never made any other selection, and that he was still ready to comply, and tendered certificates, and alleges the value of certificates to have been from five to ten cents per acre, and prays that Hill be decreed to take the certificates or their assessed value, together with the expenses of surveying, etc:, and make Still a title to the 1434 acres of land. He also pleads a general denial. At March Term, 1857, Still further amending pleads peaceable possession, under color of title more than three years ; under recorded deed five years ; of 640 acres ten years.; together with numerous other pleas, to the effect either that Hill had made no selection, or that having made one, Still had secured it with the McLamore certificate, which having proved bad, Hill had relocated the land himself, by which Still was prevented from performing his contract.

The record shows no action of the Court upon any exception to the pleading. At March Term, 1857, the cause was tried, and on a general verdict for defendant Still, a judgment was rendered simply that Hill take nothing, etc., and pay costs. A motion for new trial was made because the verdict was contrary to the law and evidence, and one upon which the Court could not do justice to the parties, being general and not referring to any one of the variant pleas ; which motion being overruled, Hill gave notice of appeal.

Appellant assigns for error, that the verdict is contrary to the evidence and charge of the Court ; and that the Court erred in overruling the motion for a new trial.

There is no question as to the facts, that the contract of sale was made for the land (1434 acres,) that Still entered under it, and has continued to the present time ; that he has partly performed his part of the contract by paying the money, and that he has not performed the other part which required him " to give said Hill one-third of a league of land, to be

selected by said Hill." It is obvious, too, from the terms of the contract, confirmed by other evidence, that the parties, at the time of the contract, had in view either a particular tract of land or a particular certificate, out of which the selection of the one-third of a league was to be made by Hill, and title thereto to be made to him by Still ; and it is well established, that Hill did make the selection of the particular tract ; and that Still never has been and is not now able to perform that part of his contract, by making a title to that particular tract so selected.

What are the legal consequences of such non-performance, is the question in dispute. That must depend, first, upon the meaning of the contract at the time it was entered into ; and, secondly, upon the conduct of the parties referring to and affecting it.

The contract is the same in legal effect as a penal bond, in ordinary form, to make title to land when the purchase money shall be all paid or any other act shall be done beneficial to the vendor. The draftsman of the contract collated all the obligations of each party, in distinct parts of the same instrument ; by which the alternative obligations to pay two thousand dollars, or make title to the 1434 acres of land, are blended in the same sentence, and together made dependent on the same condition. A literal interpretation might lead to the conclusion that Still must perform every part of his obligation, just as stipulated, otherwise the whole obligation on the part of Hill would be a mere nullity, conferring no legal or equitable rights. Such could hardly have been intended. Still would not likely purchase a home and from time to time bestow his labor and expense in improvement, and pay several hundred dollars on it, at that time in Texas, with such a forfeiture of it all hanging over him, if he failed to make title, under all circumstances, to a particular tract of land not then selected and perhaps not surveyed. He did not literally perform his contract as to the money ; he stipulated to pay it on

or before the first of January, 1839 ; he did not pay it then, but on the 31st of January afterwards ; yet no complaint of forfeiture is then made.   If Hill himself had regarded this as an instrument utterly void after a non-performance in one particular, he would hardly have acknowledged it for record in 1844 before the Clerk.   The whole scope of the agreement, taken in connection with the objects and acts of the parties, shows that it is entirely unlike the case of Edwards v. Atkinson, (14 Tex. R. 373,) wherein time and exact performance were the essence of the obligation.   The Court will not construe a contract so as to produce a forfeiture of a legal or equitable estate, unless that intention is plainly indicated.

The next question then is, Were there any circumstances connected with the conduct of the parties, which might constitute an excuse for the non-performance ?

If the leading consideration of the sale was the money, and the furnishing a certificate and paying expenses, etc., on the third of a league was an inconsiderable part, not looked to as of much importance at the time by the parties, then its non-formance would be compensated in damages, and would not cause a rescission of the contract. (York v. Gregg, 9 Tex. R. 86.)   The evidence does not disclose anything on this subject.

Again ; if the defendant Still did endeavor in good faith to fulfill his contract, by having the land surveyed, &c., and the certificate located on it proved to be bad, and Hill, without giving Still a reasonable opportunity to secure the land, located on it himself, and Still in a reasonable time thereafter offered and was ready to secure the land, and Hill thereby prevented him from fulfilling his contract, then Still might be excused for non-performance, by paying the necessary expense of securing the land, with interest, as damages.   The force of this excuse for non-performance would be greatly increased by acquiescence of Hill.   (11 Tex. R. 247, directions for reforming case of Estis v. Browning.)   And, upon the same principle, though Still had failed by his own negligence, and Hill chose

not to rescind, but waived and acquiesced in the failure until by great lapse of time and the making of improvements the property was greatly changed in value, such waiver and acquiescence would excuse the performance, upon ample compensation being made for the value of the thing not performed. Many of these elements of an equitable excuse are to be found in this case. We hear of no complaint of non-performance until some time in 1843 or 1844, after the McLamore certificate had failed ; and it may thence be inferred that Still had some such connexion with placing it on the land, as afforded at the time a reasonable assurance of security to Hill. Still might reasonably, so far as it appears, rely on the genuineness of the certificate until its validity was judicially tested. What time elapsed between its final failure and the location of the land by Hill, does not appear, but as early as 1843 or 1844, and before any repudiation or rescission of the contract was made or claimed by Hill, Still offered to secure the land if Hill would remove the obstruction he had placed in his way. And so he has continued up to the trial to acknowledge his obligation, by offering to pay for the certificate and expenses, and to furnish certificates to be located, out of which a selection could be made. Hill continued to acquiesce in the non-performance, until 1846, (December,) when he brought his suit for specific performance or a rescission of the contract and damages. That itself can hardly be said to be an absolute repudiation of the contract ; for it is founded on it. The first unequivocal notice given to Still, of his intention to abandon and annul the contract, was in August, 1852, (nearly ten years after the McLamore certificate had failed,) when he filed an amended petition, alleging him to be a trespasser and seeking his ejectment ; during all which time Still was making improvements and rendering the same for taxes.

Such are the circumstances tending to excuse the non-performance and establish thereby a verdict for the defendant. But what sort of a verdict ? Had the charge of the Court

permitted to the jury a more expanded scope of action, and had the evidence been applicable to a more enlarged equity, the verdict doubtless would have been different.   The charge presented but one test in their determination, and there was but one result to follow.   He who was in fault (as to the non-performance,) should lose the land.   There is one state of case only, that can well be imagined, wherein such a rule would be applicable to this case, and lead to such a result, and that is, if it were made clear affirmatively, that Still was proceeding with the utmost diligence and in the proper way to perform the contract, and was prevented from doing it by the wrongful act of Hill.   It does not so appear with any distinctness, and if at all by remote inference.   For the evidence does not show otherwise than by inference, that Still ever owned or controlled the McLamore certificate ; nor does it show that Still secured or attempted to secure the land by another certificate just as soon as the McLamore certificate had failed.   Therefore this verdict, as it is, cannot be sustained under that rule.   Nor can it be sustained under the principles we have announced. For it is not by legal right, but by equitable defence, that one holding under another by title bond can resist ejectment.   And generally he must do that by showing full performance or readiness to perform, (Browning v. Estis, 3 Tex. R. 462, and cases there cited,) and if he has failed to perform, it is incumbent on him to show a waiver of his default, or an equitable excuse for it, and make reparation in some way or other by compensation or damages.   (Estis v. Browning, 11 Tex. R. 247, and views of Kent as there quoted.)   Shielded by equity he must do equity.   This verdict is in violation of that rule.   The facts authorized his protection, but that protection was indissolubly connected with, and dependant upon, his repairing the loss or damage, which he continually professed to be willing and able to do.   This verdict gives him protection, without requiring that which is a condition precedent ; and therefore is erroneous.

It is not readily perceived how the Statute of Limitations can arise under the facts of this case. Because Still has not held adversely at any time, but has always recognized the superior legal right of his vendor, by repeatedly proffering to perform his contract or make reparation for not doing so.

The cause must be reversed and remanded for further proceedings.

Reversed and remanded.