## ALEXANDER YOUNGER v. JOHN WELCH'S Ex'x.

In an action to enforce the specific performance of a contract to convey land, if the obligation acknowledge the consideration, and be independent upon its face, no allegations or averments are necessary, in order to constitute a good cause of action, except the neglect and refusal to comply, on the part of the obligor.

An obligation to convey lands, independent on its face, may be shown, by parol evidence, to be dependent upon the payment of a note given for the purchase money; although neither the bond nor the note refer to the other, or are apparently connected with each other.

Where an obligation, appearing on its face to be independent, is sought to be made dependent, by facts connected with the transaction, such facts should be averred and proved; and it should be left to the jury to determine, whether the contracts of the parties were dependent: the fact that they were so, ought not to be assumed by the court.

27

Courts of equity will relieve against forfeitures arising from want of punctuality as to time, unless it be shown that time is of the essence of the contract.

The non-performance, by the obligee, of conditions upon which the consideration of the obligation rests, does not, of itself, put an end to the contract, but may depend upon its disaffirmance by the obligor.

If the obligor would disaffirm his contract, on account of the non-compliance, by the obligee, with the conditions of it, he must make known his intention to do so, within a reasonable time, either by actual notice, or by acts and declarations manifesting such intention. What will be such reasonable time, must depend upon the particular circumstances of the case: and it seems, it must be done promptly, or it will be presumed to have been waived.

Where the time, or mode of payment, is the inducement to the contract, and has been disregarded by the obligee, equity will not enforce a specific performance of it, if objected to, even when there has been no act of disaffirmance by the obligor, provided such enforcement would be inequitable.

Long acquiescence of the obligor, after the laches of the obligee, (evidenced by a suit on the note for the purchase money, or by efforts for a settlement between the parties, which is not accomplished, owing to a disagreement in relation to matters other than the laches of the obligee, but claimed legally to result from them,) would be evidence of the waiver of a disaffirmance of the contract. The evidence in the case pointing to such acts of affirmance, it was erroneous in the court to submit to the jury, as the sole test of affirmance by the obligor, and performance by the obligee, that, if, subsequent to the default of the obligee to pay in corn, the obligor offered to receive money, and it was tendered in specie, that would be a sufficient performance to maintain the suit; for thereby, any other mode of affirmance of the contract, or waiver of the default, would be left out of view.

APPEAL from Ellis. Tried below before the Hon. Nat. M. Burford.

This action was brought by Younger, the appellant, against Welch, in the District Court of Navarro county, in January, 1851, to enforce the specific performance of a contract contained in Welch's bond to the appellant, bearing date the 2d day of November, 1849, whereby he bound himself, in the penal sum of three thousand dollars, to convey to Younger, within six months, three thousand four hundred acres of land, described in the obligation as follows: "situate and "lying in the State and county above named, on Richland "creek, being parts of different tracts, all joining, all the bal- "ance of the Meredith league, supposed to be twenty-one hun-

"dred acres, more or less, not sold to others; six hundred and "forty acres, south of Richland prairie, S. E. Doct. Hill; the "balance to come off of Smith or Treadwell's headright, on said "John Welch's part of said tract."

At the first (April) Term, the defendant appeared and filed a general demurrer, and a general denial. At the October Term, 1851, the plaintiff amended his petition, claiming the entire thirty-four hundred acres out of the Meredith league, averring that, at the time of the contract, so much of said league was unsold to others, and describing the same by metes and bounds; and also averring full payment to Welch of $1,500, the purchase money for said land. At the Spring Term, 1852, N. B. Stroud intervened, alleging that, in 1845, Welch sold to Beden Stroud three sections of said Meredith league, for which full payment was made; that Younger, at the time of his purchase from Welch, had full knowledge of the fact of Stroud's purchase; and that in May, 1851, Welch, in completing the contract with Beden Stroud, conveyed said three sections to N. B. Stroud, the intervenor. At the same term, Elizabeth Dawson also petitioned to intervene, claiming 320 acres of said Meredith league, under a purchase from Welch; to both of which petitions, exceptions were filed by the plaintiff.

At the November Term, 1854, the defendant filed an amended plea, averring a total failure of the plaintiff to pay the consideration for which the defendant had given his obligation to convey the said land; and that the consideration of the obligation was the note of the plaintiff for $1,170 50, of the same date with the bond, and payable in four months, in corn, at Fort Worth, at seventy five cents per bushel, which plaintiff had never paid.

The same facts were pleaded in various forms, in separate answers, averring in substance that the undertaking, on the part of defendant, was dependent upon the punctual performance, by the plaintiff, of his part of the contract; that the sole inducement, which moved defendant in giving the obligation to convey the land, was the punctual performance, on the part of plaintiff, in the payment of the purchase money, $1,170 50, in

corn at seventy five cents per bushel, to be delivered at Fort Worth, within four months; thereby enabling defendant to fulfill a contract with the United States for the delivery of corn; averring also a total failure, on the part of plaintiff, and an abandonment of the contract by him, and praying a decree canceling the note for the purchase money, and the obligation to convey, &c.

Defendant also pleaded notice to plaintiff, at the time of the contract between plaintiff and himself, of previous sales made by him to Stroud and others, of a large portion of the Meredith league; and the tender of a deed to plaintiff, of the residue of said league, with other lands, according to the terms of his obligation; but that plaintiff refused to accept the same, and pay the purchase money, and three hundred dollars, the difference between the seventy five cents per bushel for the corn, and the value of it at Fort Worth.

At this stage of the proceedings, the venue was changed to Ellis county. At the September Term, 1856, the death of defendant was suggested, and Jedeiah Welch, the widow and executrix of John Welch, was made defendant; who filed an amended plea, averring that plaintiff, and her testator in his lifetime, by a verbal agreement, canceled the obligation of the testator, and agreed upon other lands, mostly included in the Meredith league, to be taken in lieu of those agreed to be conveyed by the instrument sued on; and averring a readiness to make the deed, on being paid the purchase money.

The plaintiff excepted to all the amended answers of defendant; and at the December Term, 1856, the plaintiff amended, and charged that Stroud had fraudulently obtained a deed from Welch, with notice of the sale made by Welch to him; and pleaded payment, in general terms, of every thing he ever owed Welch, without specifying particulars as to time, amounts, or manner of payment.

To this plea of payment defendant excepted specially, assigning as cause, that the allegations of payment were vague as to time and manner.

The exceptions of plaintiff, to defendant's amended answer, so far as relates to the averments, setting up a subsequent parol

contract to substitute other lands than those embraced in the written contract sued on, were sustained by the court; to which defendant excepted. The defendant's exceptions to the amended petition of plaintiff, filed at December Term, 1856, were over-ruled; to which ruling of the court, defendant excepted. On the other exceptions of the parties, there did not appear to have been had any action by the court.

On the trial of the cause, at December Term, 1856, the plaintiff introduced in evidence, the bond described in the petition; and proving various payments upon, and off-sets to, the note held by defendant; also the record evidence of the pendency of a suit on the note held by defendant, showing it to be the same note given by plaintiff to defendant, in the purchase of said tract of land, which suit was instituted by Welch, at the Spring Term of the District Court, 1851; and also other testimony, upon the various issues tendered by the plaintiff, not essential to be here set forth.

The defendant then offered the note given by plaintiff for $1,170 50, bearing date with the obligation given by defendant for the conveyance of the land, as follows:

"Four months after date, I promise to pay John Welch "eleven hundred seventy dollars and fifty cents, to be paid in "corn, delivered at Fort Worth, at six bits per bushel, or more, "if I can contract it for more. November 2d, 1849.

"A. YOUNGER."

The defendant introduced testimony, in support of the allegations made, and issues tendered by him; and also to prove that he had offered, and endeavored to dismiss the suit brought by him upon the note; which was objected to, and prevented by plaintiff.

The court charged the jury,

"1st. To entitle the plaintiff to a decree for a specific per-"formance of the contract sued on, he must show a full compli-"ance, on his part; by showing, that he has paid the purchase "money, in accordance with the terms and stipulations of the "contract of sale.

"2d. If the jury believe, from the evidence, that the note "mentioned in the defendant's answer, was made by Younger, "as the consideration of the land sued for, then it was incum-"bent on Younger to pay, or tender payment of the amount due "on said note, before he had any right to demand conveyance "from Welch for the land sued for.

"3d. The defendant having denied under oath, the payment "of the purchase money for said land, it devolves on the plain-"tiff to prove payment, or tender of payment.

"4th. If the evidence shows that Younger failed to deliver "the corn, as stipulated in his note, then this amounts to an "abandonment of the contract, unless he has shown that the "acts of Welch prevented the delivery, and Welch was no longer "bound to make a title to the land.

"5th. The court charges that the note was for the payment "and delivery of corn; and that, when plaintiff delivered the "corn at Fort Worth, then he was entitled to receive a title. "If he never delivered the corn, then he failed to comply with "his contract, and cannot succeed in this suit; unless, subse-"quent to his failure to deliver the corn, Welch offered to receive "money instead of corn, and plaintiff, in compliance with such "offer, tendered to Welch sufficient money, in gold, silver, or "current bank notes, to pay said note.

"6th. If the plaintiff failed to deliver the corn at Fort Worth, "as stipulated in his note, Welch, in addition to the amount of "dollars specified in the note, would be entitled to the differ-"ence between seventy five cents, the price of the corn men-"tioned in the note, and the actual value of the corn at Fort "Worth, at the time the note fell due; that if the plaintiff was "to deliver the corn at seventy five cents, and the corn was "worth, to Welch, when delivered, one dollar, then Welch "would be entitled to the additional twenty five cents, on as "many bushels of corn as it would take to pay the note at "seventy five cents per bushel, and Younger would be bound to "pay Welch this additional amount."

There were various other charges given, and some asked for

which were not given, but as no reference is made to them in the opinion of the court, they are omitted.

The jury returned a general verdict for the defendant, and the court entered a decree, canceling the bond of Welch, and the note of Younger; from which decree the plaintiff took his appeal to this court.

*J. M. Ferris,* for appellant.

*George F. Moore,* for appellee.

ROBERTS, J.   Appellant brought an action for the specific performance of an agreement, executed by appellee in his favor, for a tract of land, of thirty four hundred acres, "being part of "different tracts, all joining, all the balance of the Meredith "league, supposed to be twenty one hundred acres, more or "less, not sold to others; six hundred and forty acres, south of "Richland prairie, south-east of Dr. Hill's; the balance to "come off of Smith or Treadwell's headright, on said John "Welch's part of said tract."   It acknowledges a consideration of fifteen hundred dollars; is executed on the 2d day of November, 1849; and binds Welch to make Younger, his heirs or assigns, a deed with warranty, in six months thereafter.   The petition was filed on the 24th day of January, 1851, which sets forth the obligation, and alleges that Welch has wholly failed and refused to comply with its terms, and has not conveyed the land to the petitioner, as he was bound to do.

From the shape of the agreement, it was not necessary to allege any additional fact, to constitute a good right of action, except its non-performance by Welch, at the time stipulated.   It was not necessary to allege, specially, that the purchase money had been paid, for the bond showed that. The making of the deed, by Welch, was not made dependent upon any condition, such as the payment of the purchase money, as is most usual in such bonds, but a time was fixed within which the deed was to have been made.

The answer of the defendant contained various pleas, intended to present the same or similar grounds of defence. Defendant alleges, that the consideration for which the bond was given, was the punctual payment of the following obligation:

"Four months after date, I promise to pay John Welch, "eleven hundred seventy dollars and fifty cents, to be paid in "corn, delivered at Fort Worth, at six bits per bushel, or more, "if I can contract it for more. November 2d, 1849."

(Signed)      "A. YOUNGER."

That the sale was made for the sole and only purpose of complying with a contract, made by Welch, for supplying corn to the United States troops, at Fort Worth, at one dollar per bushel; that Younger wholly failed and refused to deliver the corn, as stipulated, "by reason whereof, and said failure of said "contract, said defendant is released and discharged from the "same, and prays the court that said note be canceled, and said "writing sued upon be canceled, and that the parties be placed "in the same situation they were before the making of said "contract."

The judgment of the court was rendered in accordance with this prayer, so far as to rescind the contract.

The court charged the jury, that, "4th. If the evidence "shows that Younger failed to deliver the corn, as stipulated in "his note, then this amounts to an abandonment of the contract, "unless he has shown that the acts of Welch prevented the "delivery, and Welch was no longer bound to make the title to "the land." And, "5th. That the said note was for the pay- "ment and delivery of corn; and that, when plaintiff delivered "the corn at Fort Worth, then he was entitled to receive a title: "if he never delivered the corn, then he failed to comply with "his contract, and cannot succeed in this suit, unless, subse- "quent to his failure to deliver the corn, Welch offered to "receive money instead of corn, and plaintiff, in compliance "with such offer, tendered to Welch sufficient in gold and sil- "ver, or current bank notes, to pay said note."

These charges proceed upon the assumed truth of two propositions, to wit:

1st. That the punctual delivery of the corn was the sole consideration and inducement to the contract of sale.

2d. That default, on the part of Younger, in not delivering the corn, by the time stipulated, was in and of itself an abandonment of the contract of purchase, and put an end to it.

The first proposition involves an important question of fact, which should have been left to the jury. The two obligations, one for the land, and the other for money to be paid in corn, were in their terms independent contracts, expressing no relation to each other, each binding the obligor therein to perform unconditionally at a fixed time, and each at a different time from the other. (1 Sugd. on Vend. 262, and note; Perry v. Rice, 10 Tex. Rep. 367.) It was incumbent upon the defendant to aver and show the connection and dependency, and state such facts as would tend to render it inequitable for the plaintiff to enforce a specific performance of the bond, as an independent covenant. (Id.; and also 1 Sugd. on Vend. 261, §§ 56, 57, 58.) This he did, by averring distinctly the fact, which did not appear upon, nor could be inferred from, the face of the obligation, that the "punctual payment" of the note in corn, was the sole and only consideration and inducement of the sale, &c. It was this averment, by which it was sought to make the *time* and *manner* of performing his part of the contract, on the part of Younger, important, and of the essence of the contract. Upon the face of the papers, equity would not have regarded the punctilious performance, as to time or manner, as indispensable to the maintenance of the contract. (Halsey v. Grant, 13 Ves. Jr. Rep. 73; Horniblow v. Shirley, Id. 81; Alley v. Deschamps, Id. 225; Seton v. Slade, 7 Id. 265.) Courts of of equity are continually relieving against forfeiture of rights being claimed upon the failure to perform by the exact time stipulated, where time is not shown to be the essence of the contract. (1 Sugd. on Vend. 287; Seton v. Slade, 7 Ves. Rep. 245.) But for this averment, it might be difficult to see why

payment of the note in money, ($1,170 50) would not be as good, as in corn at "six bits per bushel." The averment was most material, as giving character to the whole trade, and as interpreting the intention of the parties in reference to the mode of performing the contract. The facts averred should have been passed upon by the jury, and not assumed by the court.

The second proposition is liable to an objection of a different character. Such default of Younger, if it occurred, did not of itself put an end to the contract, although it gave Welch the right to put an end to it.

Any act of disaffirmance, then, done by Welch, would have put an end to it; as by selling the land to another, bringing a suit to rescind, or the like. (Hatch v. Cobb, 4 Johns. Ch. Rep. 559.) If Younger, after such default, had manifested a decided, positive abandonment of the contract, Welch's acquiescence in Younger's abandonment, would have disaffirmed the contract. If, on the other hand, Younger had, after such default, notoriously persisted in holding on to the contract, then Welch's acquiescence would affirm and continue the contract. (Mitchel v. Shepard, 13 Tex. Rep. 493; 1 Sugd. on Vend. 275.)

Upon such default, Welch had the option to continue the contract, or put an end to it. Still, in a reasonable time, he must make his choice. If he had chosen to disaffirm it, he must have manifested it by such acts, words, or silence, according to the circumstances, as would have indicated his intention to do so. "Where one party fails in performing the "contract, the other, if he mean to rescind it, should give clear "notice of his intention." (Sugd. on Vend. 266.)

This most important distinction is not embraced, either in the charge, or in the pleas; but the act of default, on the part of Younger, which only gave to Welch the right to disaffirm, is treated, in this case, as putting an end to the contract.

What would have been a reasonable time for such disaffirmance to be manifested, must depend upon the circumstances of the case. It is said, that it must be done promptly, and decidedly, or it will be presumed to have been waived. (Lawrence v. Dale, 3 Johns. Ch. Rep. 23.)

If this suit had been brought so soon after the default, as that a reasonable time would not have elapsed to have manifested it, then it might have been claimed, and set up in the answer. But here, nearly eleven months elapsed after the default, before this suit is brought; and nearly four years afterwards, the amended answer is filed, by Welch, which claims a forfeiture of the contract, upon the alleged default to perform it, and prays a rescission for the first time; and no act of disaffirmance, on the part of Welch, is alleged during that whole time. Under these circumstances, there must have been ample time, perhaps even in the ten months before suit, to have manifested a disaffirmance of the contract; and therefore, the court should have required it to have been alleged and proved, and should not have dispensed with the necessity of it, in its charge, by making the default of itself put an end to the contract.

Again, although there had been no act of disaffirmance of the contract, by Welch, after he had the right to do so, had the first proposition been clearly established, (that the punctual payment of the corn was the inducement to the trade,) the second might have followed, as a consequence, in the absence of any affirmance by acts, or acquiescence, by Welch; for equity will not, in the absence of such affirmance, enforce a contract, if it be objected to, where the non-performance has been so material, or attended with such laches and failures, as to render its enforcement inequitable. (Guest v. Homfray, 5 Ves. Rep. 818; Benedict v. Lynch, 1 Johns. Ch. Rep. 370.)

The only qualification of the fifth charge, above quoted, was, that if, subsequent to the failure to pay in corn, Welch *offered* to receive money, and it was *tendered* in specie, or current bank notes, by Younger, that would be a sufficient performance to maintain the suit. This leaves out of view any other mode of affirmance of the contract, or waiver of the default. The evidence pointed to other modes, much more directly than this, as long acquiescence; the act of bringing a separate suit on the note by Welch, before he filed his answer; and negotiations and efforts, by the parties, after the default, to settle the matter;

which seems to have been prevented, only by a misunderstanding about the right of Welch, to demand three hundred dollars more than the face of the note called for. (Lewis v. Woods, 4 How. Miss. Rep. 87; 1 Sugd. on Vend. 275; Sanger v. Wood, 3 Johns. Ch. Rep. 416; Brock v. Jones, 16 Tex. Rep. 461.) This will suffice to show that the cause should be remanded.

The evidence exhibited that Younger had paid part of the note, and had off-sets sufficient to discharge most, if not the whole of it; and that the main reason why the parties did not themselves come to an amicable settlement of the whole matter, was a disagreement about Younger's obligation to pay the three hundred dollars claimed by Welch, in addition to the amount of the note. The evidence, in the record, does not sufficiently show his right to demand this additional amount.

As a valid off-set has ever been held, by this court, as an extinguishment, *pro tanto*, of the debt sued for, no reason is seen why Younger should be expected, or required, to pay gold and silver in discharge of this note, while he held such valid off-sets in his hands.

The plea of payment was vague and general, and did not specify the manner in which the note was discharged, by setting forth the off-sets and items of payment, which were intended to be relied on. Being specially excepted to upon these grounds, it should have been held bad. Had this been done, plaintiff might have amended his pleading, so as to have obviated any objection to the evidence made to the off-sets and payments.

The other pleas and charges, and the questions in relation to the intervenor, need not be discussed, as the parties will no doubt think it proper to present, more fully and definitely, the facts upon which they respectively rest their rights.

The objection taken to the description of the land intended to be sold, in the bond, is certainly not tenable, as to that part of the land included in the league; and as to the other, it probably may be made certain, by appropriate allegations. (Casey v. Holmes, 10 Ala. Rep. 778.) Judgment reversed, and cause remanded.

Reversed and remanded.