### GAUT v. DUNLAP et al. (No. 1028.)

(Court of Civil Appeals of Texas. Amarillo. Oct. 18, 1916.)

1. BROKERS ☞60—REALTY BROKER—RIGHT TO COMMISSION—"DEAL."

Where a contract for the exchange of lands provided that the exchange be completed by execution and delivery of warranty deeds on or before noon, January 1, 1916, and that when the deal was closed the first party would owe the agent $250 commission, and no deeds were ever executed or delivered, the agent could not claim his commission, unless his principals had by their own wrong prevented consummation of the contract; a "deal" being an arrangement to attain a desired result by a combination of interested parties.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 91; Dec. Dig. ☞60.

For other definitions, see Words and Phrases, First and Second Series, Deal.]

2. TIME ☞9(10)—COMPUTATION.

Where a contract for the exchange of lands bound each party to deliver an abstract to the other within 10 days from December 18th, the 10 days did not expire as a matter of law until December 29th.

[Ed. Note.—For other cases, see Time, Cent. Dig. §§ 30, 31; Dec. Dig. ☞9(10).]

3. VENDOR AND PURCHASER ☞78 — TIME AS ESSENCE OF CONTRACT.

Generally, time is not of the essence of a contract for the sale of realty.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 121–125; Dec. Dig. ☞78.]

4. SALES ☞54 — TIME AS ESSENCE OF CONTRACT.

Time is usually of the essence of a contract for the sale of goods and other personalty, because its price is generally fluctuating, and the property itself subject to deterioration.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 152; Dec. Dig. ☞54.]

5. EXCHANGE OF PROPERTY ☞4—TIME AS ESSENCE OF CONTRACT.

Where parties contracted to exchange realty for other realty and a stock of merchandise, the contract limiting, by specific provisions, the time in which abstracts were to be furnished, declaring that the exchange should be completed before noon on a fixed date, time was of the essence of the contract.

[Ed. Note.—For other cases, see Exchange of Property, Cent. Dig. § 4; Dec. Dig. ☞4.]

6. EXCHANGE OF PROPERTY ☞6—WAIVER OF DEFAULT.

Where a party, who had contracted to exchange realty, believing the time had expired in which the other party could require him to accept an abstract under the contract, nevertheless accepted it, submitting it to his attorney for examination, he waived the time limit for furnishing the abstract.

[Ed. Note.—For other cases, see Exchange of Property, Cent. Dig. § 11; Dec. Dig. ☞6.]

7. EXCHANGE OF PROPERTY ☞6—WAIVER OF STIPULATION.

The act of a party, who had contracted to exchange realty, in accepting an abstract of title believing that the time had expired in which the other party could require him to accept, though a waiver of the time limit for furnishing the abstract, was not a waiver of the requirement that the abstract should show clear and merchantable title.

[Ed. Note.—For other cases, see Exchange of Property, Cent. Dig. § 11; Dec. Dig. ☞6.]

8. VENDOR AND PURCHASER ☞140—SHOWING OF CLEAR AND MERCHANTABLE TITLE.

An abstract of title showing that the land has been conveyed to a husband and wife, and that subsequently the former, when a widower, conveyed, does not show clear and merchantable title.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 262–264; Dec. Dig. ☞140.]

9. VENDOR AND PURCHASER ☞140 — CLEAR AND MERCHANTABLE TITLE.

An abstract of title not brought down to date does not show a clear and merchantable title.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 262–264; Dec. Dig. ☞140.]

10. EXCHANGE OF PROPERTY ☞6—ABSOLUTE REFUSAL TO PERFORM—EFFECT.

Where a contract for the exchange of realty provided that it should be completed by the delivery of warranty deeds on or before noon, January 1, 1916, and a party's attorney declared the title insufficient December 30th, such party immediately refusing to continue the negotiations or close the deal, the other party was relieved of any further effort to perform.

[Ed. Note.—For other cases, see Exchange of Property, Cent. Dig. § 11; Dec. Dig. ☞6.]

11. BROKERS ☞63(2) — REALTY BROKER — RIGHT TO COMMISSION.

An agent, who negotiated a contract for the exchange of realty providing that his commission should be payable when the deal was closed, the contract providing for its consummation by exchange of warranty deeds January 1, 1916, and who could show that the party whom he procured was ready, willing, and able to close the deal at any time before the date fixed, or could show that but for the action of his principal in refusing to consummate the deal the other party could and would have complied with the contract before such time, could recover his commission.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 79, 81, 94–96; Dec. Dig. ☞63(2).]

Appeal from Deaf Smith County Court; Jas. A. Hughes, Judge.

Action by J. R. Gaut against Eli Dunlap and another. From a judgment for defendants, plaintiff appeals. Reversed, and cause remanded.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

W. H. Russell, of Hereford, for appellant.
Knight & Slaton, of Hereford, for appellees.

HALL, J. Appellant Gaut sued appellees Eli Dunlap and W. L. Brodie to recover $250, alleged to be due him as commissions for negotiating an exchange of property between appellees and one Walter Cheek. From a judgment for appellees this appeal is prosecuted.

[1] The refusal of the court to direct a verdict for appellant is first assigned as error. It is first contended under this assignment that the following proposition is applicable and should control the disposition of the case:

"Where a real estate broker is employed to procure an exchange of real property, and he produces a person with whom his principal is satisfied, and such person and principal enter into an enforceable written contract for the exchange of their respective properties, upon terms mutually satisfactory, the broker has earned his commission."

The contract upon which the suit is based is in substance that, whereas, Dunlap and Brodie are the owners of a store building, a stock of general merchandise and fixtures, to the amount of $8,000, and a residence at Umbarger, Tex., and are desirous of exchanging the same for a certain half section of land owned by Cheek near Jester, Okl., and valued at $16,000, it was agreed that Dunlap and Brodie should convey to Cheek the real estate situated in Umbarger, free from incumbrance, except $2,500, evidenced by two vendor's lien notes bearing 8 per cent. interest, and that Cheek should convey to Dunlap and Brodie the half section in Oklahoma, free from incumbrance, except $3,000 due a loan company; that, should the stock of merchandise and fixtures invoice less than $8,000, the amount should be deducted from the amount of the notes thereinafter mentioned; but, in case the invoice price of the merchandise should exceed $8,000, such excess should be paid to Dunlap and Brodie out of the regular daily sales of said merchandise until the full amount is satisfied.

Paragraph 2 of the contract is:

"Each party hereto shall, within ten days from date hereof, deliver to the other party hereto an abstract of title, showing a clear, merchantable title to the land by him to be conveyed hereunder, save and except as to the incumbrances herein referred to."

Paragraph 3 is:

"The said exchange of real estate shall be completed by execution and delivery of a good and sufficient warranty deed in accordance with the terms of this contract on or before the hour of noon on the first day of January, 1916."

Paragraph 6:

"Said deeds shall be placed in escrow with the First State Bank & Trust Company of Hereford, Texas, and they are authorized to deliver same to the receiving parties herein provided."

The contract contains, among other things, the following stipulation:

"When this deal is closed the first party will owe J. R. Gaut $250.00 commission."

If the last-quoted provision in the contract is to govern the rights of the parties the proposition urged under this assignment cannot be sustained. Paragraph 3, supra, states clearly that the deal shall be completed by the execution and delivery of good and sufficient deeds on or before the hour of noon of January 1, 1916. No deeds were ever executed or delivered, and under the plain language of the contract appellant cannot claim his commissions unless Dunlap and Brodie have, by their own wrong, prevented its consummation; and this seems to be the construction placed upon it by appellant himself, who stated at the time the contract was signed in Umbarger, on December 18th, that he hoped the deal would be closed that day as he wanted his commissions for Christmas money.

It is clear from the record that none of the parties to the contract understood that the execution of the contract itself had the effect of closing the deal or entitled appellant to the commission. If such had been the meaning of the contract and the understanding of the parties, appellant would have been entitled to the $250 when the contract was executed. If the words "when this deal is closed" had not been used, the appellant's proposition would apply. It can have no application here, however, because the contract itself fixes the time for payment. A "deal" has been defined to be "an arrangement to attain a desired result by a combination of interested parties." Ball v. Davenport, 170 Iowa, 33, 152 N. W. 72. The result desired by the parties in this case was an exchange of properties, and, considered in the light of this definition, it could not be closed until the exchange had been effected.

[2] We will not undertake to consider the various assignments in the order in which they are presented in the brief, but we can dispose of the issues in a more direct way. The contract binds each party to deliver to the other within 10 days from the 18th day of December, 1915, an abstract of title showing a clear, merchantable title to the land to be conveyed except as to certain incumbrances. According to this stipulation, the 10 days did not expire as a matter of law until December 29, 1915, since in computing the time the 18th of December must, under the general rule, be excluded. Hill v. Kerr, 78 Tex. 213, 14 S. W. 566; 2 Elliott on Contracts, § 1550.

[3-5] After reviewing the authorities, we are convinced that time is of the essence of this contract. The general rule is that time is not of the essence of contracts for the sale of real estate; but, as stated by Hemphill, Chief Justice, in Edwards v. Atkinson, 14 Tex. 373:

"It appears, then, that time may be of the essence of the contract for the sale of land, not only by the express agreement of the parties, but where the circumstances of the case show such must have been their intention. * * * The fact that land is the subject of a contract of sale is not, of itself, sufficient to make time of the

essence of such contract; but the fact that land is constantly rising, in this state, in value, is a circumstance in favor of the presumption that time is to be, and was regarded by the parties as, material."

It will be noted that the contract under consideration not only limits, by specific provision, the time in which abstracts are to be furnished, but declares that the exchange itself shall be completed before the hour of noon on the 1st day of January, 1916. This, of course, was not a contract for the sale of real estate as that expression is usually understood, but provided for the exchange of real estate for certain other real estate and personal property. The rule is that time is usually of the essence of a contract for the sale of goods and other personalty, because the price of such property is generally fluctuating and in some instances the property itself is subject to deterioration. The stock of goods in the instant case was one of general merchandise, and for that reason we think is within the general rule. 2 Elliott on Contracts, §§ 1152 and 1557. It appears from the record that Dunlap and Brodie had ordered and were ordering goods; that they were daily disposing of the goods on hand. Under the provisions of paragraph 2, the 10 days' limit expired December 29th, but the parties understood that December 28th was the last day upon which the abstracts could be delivered.

[6-8] It appears from the record that, believing the time had expired in which Cheek could require him to accept the abstract under the contract, Dunlap nevertheless accepted it and submitted it to his attorney for examination. This constitutes a waiver of the time limit for furnishing the abstract, but it cannot be construed to be a waiver of the requirement that the abstract so furnished should show a clear and merchantable title to the land. Without discussing the objections to the title which were made by Dunlap's attorney in detail, it is sufficient to say that it was not a clear and merchantable title. The abstract showed that the land had been conveyed to H. A. McKinney and wife, M. E. McKinney; that subsequently H. A. McKinney, when a widower, conveyed to H. Mathewson.

[9] Another objection urged was that the abstract had not been brought down to date. In the face of these objections, the requirements of paragraph 2, as to title, had not been, of course, met.

[10, 11] It will be noted that paragraph 3 provides that the exchange between the parties shall be completed as therein specified on or before the hour of noon on the 1st day of January, 1916. Dunlap's attorney declared the title insufficient on December 30th, and immediately Dunlap refused to continue the negotiations or close the deal, and said, "The books are closed." This action on the part of Dunlap relieved Cheek of any further

effort, on his part, to perform. Cornelius v. Harris, 163 S. W. 346. If appellant can show that Cheek was ready, willing, and able to close the deal at any time prior to the hour of noon of January 1, 1916, or if it can be shown but for the action of Dunlap in refusing to consummate the deal Cheek could have complied with the contract before said time, appellant would be entitled to recover. The court erred in submitting the contract to the jury for construction, and in refusing to charge that the act of Dunlap, in accepting the abstract after he thought the 10 days' limit had expired, was a waiver of that provision.

The judgment is reversed, and the cause remanded.