SLADE & BASSETT v. CRUM.
(No. 1034.)

(Court of Civil Appeals of Texas. Amarillo. Feb. 28, 1917. Rehearing Denied March 28, 1917.)

1. VENDOR AND PURCHASER ⟨⟩3(4) — SALE DISTINGUISHED FROM OPTION.

A contract under which the prospective purchaser deposited earnest money to be divided in a certain way in case of nonperformance, was an option, and not a sale, contract.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 3.]

2. BROKERS ⟨⟩61(1)—COMPENSATION—DEFECT IN VENDOR'S TITLE.

Brokers securing a purchaser ready and willing to take their principal's land under an option contract are entitled to their commission if the trade fails because of defects in the vendor's title.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 77, 78, 92.]

3. VENDOR AND PURCHASER ⟨⟩129(4)—VENDOR'S TITLE—DEFECTS IN PRIOR CONVEYANCES.

A vendor's title was defective where the abstract showed a prior conveyance from testamentary trustees for a $1 consideration and a supplementary conveyance for other unnamed considerations where trustees could only sell for the property's reasonable value.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 241.]

4. TRUSTS ⟨⟩196—SALE BY TRUSTEE—POWER UNDER WILL.

Under a will authorizing trustees to sell either for yearly rent or a gross sum, or partly for each, the trust estate cannot be conveyed except for a consideration reasonably proportional to its value.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 251.]

5. VENDOR AND PURCHASER ⟨⟩18(2)—CONSTRUCTION OF CONTRACT — EXTENSION OF TIME FOR PAYMENT.

Under a contract extending an option for a consideration which was also described as a part payment on the land, the payment was intended not only for the extension, but also as

a part payment, especially under the surrounding facts.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 23.]

6. VENDOR AND PURCHASER ⟨⟩18(3)—EXERCISING OPTION—WHAT CONSTITUTES.

A letter authorizing payment of consideration for an option extension upon condition that it be returned if the vendor did not perfect his title does not sustain a finding that the writer had decided not to take the land.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 23.]

7. VENDOR AND PURCHASER ⟨⟩78 — CONSTRUCTION OF CONTRACT—TIME AS OF THE ESSENCE.

Ordinarily time is not of the essence of a contract for the sale of real estate.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 121–125.]

8. VENDOR AND PURCHASER ⟨⟩18(3)—FORFEITURE OF CONTRACT FOR NONPERFORMANCE —WAIVER.

Any right of the vendor to declare an option contract forfeited because of failure to promptly make a payment was waived where negotiations were continued for several months.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 23.]

Appeal from District Court, Castro County; R. C. Joiner, Judge.

Action by Slade & Bassett against J. L. Crum. Judgment for defendant, and plaintiffs appeal. Reversed and remanded.

Knight & Slaton, of Hereford, for appellants. Gilliland & Estes, of Hereford, and Martin & Zimmermann, of Tulia, for appellee.

HALL, J. Appellants brought this action to recover of appellee, Crum, commissions claimed to be due them as real estate brokers, under an alleged agreement with appellee that he would pay them commissions at the rate of 5 per cent. for the sale of certain sections of land in Castro county at $11 per acre. Suit was filed December 8, 1908, appellants alleging that the contract was entered into in the month of September, 1906, and that by the terms of the contract their commissions became due and payable December 6, 1906. On a former appeal this court reversed the judgment of the lower court by an opinion published in 154 S. W. 351. After the reversal appellants amended their petition, seeking a recovery upon two different theories. One is that the contract entered into between the appellee and the proposed purchaser of the land, J. W. Crudgington, was an absolute sale contract, and not an option contract, as formerly held by this court, and that the appellants had procured such purchaser, with whom Crum was satisfied under the contract, and with whom he entered into such binding contract of sale. Wherefore appellants were entitled to their commissions, although the contract of sale between Crum and Crudgington was never finally consummated. The other theory is that in the event the contract between Crum

and Crudgington is only an option contract appellants were nevertheless entitled to recover, because Crudgington was at all times ready, willing, and able to take the land, and would have done so but for the defect in the title. Appellee alleged that, while the original contract between Crum and Crudgington was to have been consummated not later than December 10, 1906, on the 5th day of December, 1906, they entered into a supplemental agreement by the terms of which the time for closing the original contract was extended to January 1, 1907, and that Crudgington has failed to comply with the terms of said supplemental contract; that Crudgington had agreed to pay $500 on or before December 15, 1906, as a consideration for the extension of the time of performance of the original contract, and that said amount had never been paid. Appellants alleged that the $500 which Crudgington bound himself to pay by the supplemental contract was not to be paid in consideration for such extension of time, but was merely an additional sum advanced as part of the cash payment for the land. A jury was impaneled to try the issues, but the court instructed a verdict for the defendant, Crum.

It is insisted under the first assignment of error that, appellants having procured Crudgington as a purchaser for Crum's land, with whom Crum was satisfied, and with whom he actually contracted for the sale thereof, at a specified price, they are entitled to their commissions even if Crudgington refused to consummate the contract, provided such refusal was caused by a defect in the title. The contract provided that Crum should furnish Crudgington an abstract of title to each of the sections on or before the 10th day of December, 1906, showing "perfect clear title" to said lands, except as to certain incumbrances mentioned in the contract. Among other provisions is one that in the event any defects appear in the titles, as shown by the abstracts, Crudgington should promptly notify Crum so that Crum might have a reasonable time in which to correct them. The closing paragraphs of the contract are as follows:

"The buyer has this day paid to the seller the sum of $2,000.00 as part of the cash payment to be forfeited to the seller in the event the buyer, upon approval of the title to said lands, after being furnished abstracts and deed as aforesaid, fails or refuses to perform his part of this contract, but to be returned to the buyer in the event the title to the seller should be found defective, and he should be unable to correct such defects.

"In the event the buyer forfeits the $2,000.00 paid, and the contract thereby is at an end, that the said sum is to be divided between the seller and Slade & Bassett, the seller's agents, in the following proportions: The seller retaining $1,500.00 and paying said Slade & Bassett the sum of $500.00. Executed in duplicate the day and date first above written."

The contract was signed by both Crum and Crudgington. The following is the supplemental contract:

"Above contract in all its terms is hereby extended to the 1st day of January, 1907, in consideration that said Crudgington pays me the sum of $500.00 on or before the 15th day of December, 1906, and pays draft to be drawn by me for $1,000.00, if I desire to draw same any time after the 15th December, 1906, as part payment on land which I may purchase. In default in payment of either of said amounts said Crudgington is to forfeit to me the $2,000.00 heretofore paid and all rights under this contract.

"This 5th day of December, 1906.
                              "[Signed]  J. L. Crum."

We think as a general rule the proposition stated in the first assignment is well supported by the authorities. Conkling v. Krakauer, 70 Tex. 735, 11 S. W. 117; Gillespie v. Dick, 111 S. W. 664; Kirkland & Son v. Berry, 136 S. W. 832.

[1] Two propositions, to the effect that the contract entered into between Crudgington and Crum was an absolute sale contract instead of an option contract as formerly held by this court, are in our opinion not supported by the authorities. As sustaining our former holding, we cite the following cases: Carter v. Smith, 184 S. W. 244; Knott v. Thomas, 180 S. W. 1114; Nelson v. Butler, 190 S. W. 811.

[2] The first proposition under the second assignment is that even though the contract be held to grant an option to Crudgington, nevertheless, if the optionee is ready, willing, and able to take the land, and would have consummated the deal but for the defect in the title shown by the abstract furnished him by the seller, the brokers are entitled to their commission. We think this proposition is sound. As said by Williams, J., in Hamburger & Dreyling v. Thomas, 103 Tex. 280, 126 S. W. 561:

"The chief ground of defense is the fact that the writing copied in the opinion of the Court of Civil Appeals, which was executed by the defendants and Baker, did not bind the latter to take the property, but left to him the alternative, even if he should prove the title, either to take it or to forfeit the $1,000 deposited. There would be more force in this if the title had proved satisfactory and Baker had exercised his right to recede from the trade by forfeiting the money deposited. In such case there would have been neither a willingness to buy nor an enforceable contract to buy, one or the other of which conditions would be essential to the brokers' right to compensation. But the latter condition is not essential where the first exists and the sale is defeated by the owner of the property. The question whether or not the plaintiff performed the service called for by the contract is not wholly dependent upon the writing executed between the owners of the property and the proposed purchaser. The fact that the latter really was willing and able to buy and would have bought, notwithstanding he was at liberty not to do so, had he not been prevented by the defendant's failure to produce proper evidence of title, must be regarded as controlling and as dispensing with the necessity of a binding contract to purchase which might otherwise have existed. The case differs from those in which there is no evidence of the rendering of the service by the broker but the granting of an option to the so-called purchaser, in the fact that a purchaser was found by plaintiff, a sale to whom was prevented only by the fault of the owner."

The testimony in the record is sufficient to support the finding that Crudgington was at all times ready, willing, and able to take the title and consummate the deal in accordance with the contract and supplemental agreement but for the defects shown to exist in the title.

[3, 4] The second proposition under this assignment is that the abstracts furnished by Crudgington do not show a "perfect clear title." This position is also well taken. It appears that the title was at one time in John Alexander Beith; that by the provisions of his will, executed in England, where he lived and died, his wife, Jane, and his two sons, Alexander and John Hay, together with two friends, viz. William John Robinson and John Brookfield Parkinson, were made trustees, and by its terms his wife was appointed the guardian of certain infant children. The only disposition made of his Texas lands was in the residuary clause, as follows:

"I give, bequeath, and devise all of the residue of my real and personal estate unto my trustees hereinafter named and appointed, upon trust for sale and conversion and to invest the residue in one or more of the modes hereafter specified."

This is followed by a number of directions to the trustees, immaterial for the purpose of this suit, and then the following clause:

"I declare that it shall be lawful for my trustees at any time absolutely to sell my real or leasehold property or any real or leasehold estate or rents purchased with any part of my estate or the proceeds thereof, and sales made by my trustees shall be made either in consideration of a yearly or ground rent or for a gross sum of money, or partly for a yearly rent and partly for a gross sum, and in selling any part of such property my trustees may give and grant any power of perception of rent or distress over any other property belonging to me, as indemnity against any overriding rent or rents."

The abstracts show a deed executed October 6, 1898, by the trustees named above, conveying the property to Cornelius Cuyler and Benjamin Graham, of New York, reciting a consideration of $1. Another conveyance, dated February 21, 1902, contains the following recital:

"Do and each of us doth declare and acknowledge that these presents are supplemental to an indenture of conveyance dated the 6th day of October, 1898, whereby certain lands and premises in the state of Texas, situated in the counties of Castro, Swisher, Randall, and Deaf Smith, were granted and conveyed by us and one John Thompson to Cornelius C. Cuyler, and Benjamin Graham, and we further acknowledge and declare that in addition to the condition of the payment of $1 expressed by such indenture, to be paid to us by the said Cornelius C. Cuyler and Benjamin Graham, there were at the time of the execution of such deed further valued considerations which passed to though such valued considerations were not mentioned in such deed."

These deeds do not show a sale of the land in strict compliance with the terms of the will as required by law, and the recitals quoted above placed the burden of showing such a consideration, as is required by the terms of the will, upon the purchaser. The abstracts therefore did not show a "perfect clear title" to the lands. As said in Hamburger & Dreyling v. Thomas, supra:

"It is true that the evidence does not show that the title was bad. * * * It was that the evidences furnished did not show the title to be good; and it was to that defendants were obligated by both their contracts," etc.

As stated above, the contract in the instant case provided that the abstracts furnished by Crum should show "perfect clear title." It is not our purpose to declare the title bad, but the extent of our holding is that the title apparent upon the face of the abstract was not in compliance with the terms of the contract. The trustees had no right to convey the trust property except for a consideration reasonably proportioned to its value, and this should appear in the abstract.

[5] Under the third assignment it is urged that the supplemental contract extending the original contract, when considered in the light of surrounding circumstances, was not susceptible of being interpreted to mean that Crudgington had promised to pay $500 in cash to Crum and to honor Crum's draft for $1,000 if subsequently drawn as a consideration for the extension of time of performance to January 1st by Crudgington of the original contract. We think this assignment must also be sustained. Our construction of the supplemental contract is that the $500 agreed to be paid on or before the 15th day of December and the $1,000 draft provided for were not to be taken solely as a consideration for the proposed extension of time, but were also to be paid as part of the purchase money for the land. We think this is apparent upon the face of the contract, but if the language of the supplemental contract is susceptible of a different construction, the surrounding facts and circumstances show that the two sums were not to be paid in consideration for the extension alone, but were to be advanced in addition to the $2,000 already paid as purchase money.

If the peremptory instruction was given upon the idea that Crudgington breached the supplemental contract, we think the fourth assignment of error should also be sustained. The supplemental contract obligates Crudgington to pay $500 on or before December 15th, and it was shown that by oral agreement subsequently made on the same day Crudgington agreed to increase this amount to $650. These agreements were made before the abstract of title had been furnished. Between that date and December 14th Crudgington, by an examination of the abstract of title, had learned of the defects, and on December 14th wrote Crum, calling them to his attention, using this language:

"Now, as to paying you the $650.00 you request, I will do it on condition that you perfect the titles and any other defects that may be discovered in any of the titles, and, failing to do so, you will refund me this money, together

with the $2,000.00 already paid you, as provided in the contract. Otherwise I will decline to pay any more money till the titles are perfected and your failing, after a reasonable time, shall demand the return of $2,000.00 as provided in the contract. Mr. Bassett has check for $650.00, which he is authorized to hand you upon your accepting this proposition, and signing this letter and duplicate."

[6] It appears that Bassett took this letter and the check mentioned to Hereford, and that Crum refused to sign the duplicate of the letter or to accept the money. There is nothing in the letter indicating that Crudgington would not take the land, but, on the contrary, a reasonable inference from it is that he will close the deal as soon as the defects in the title are remedied. The trial court was not authorized to direct a verdict upon the presumption that Crudgington had exercised the option, and decided not to take the land.

[7, 8] The general rule is that time is not of the essence of a contract for the sale of real estate (Gaut v. Dunlap, 188 S. W. 1020), and the fact that Crum did not declare the contract forfeited on December 15th, if indeed he had such right, and did not refuse to consummate the deal until the month of March, 1908, and in the meantime was negotiating with Crudgington concerning the land, show that the parties did not consider time as an important element. We doubt the right of Crum to declare the contract forfeited because of Crudgington's failure to pay the $650 on December 15th, after the title to the land had been found defective and while Crudgington was ready to close the deal, but for such defects. The effect of such holding would be to give Crum the benefits of his contract at a time when he was in default by reason of his defective title, and before the expiration of a reasonable time in which to perfect it. Raywood Canal & Milling Co. v. Sharp et al., 175 S. W. 499. Whether we are correct or not in this holding, the facts in this record are sufficient to show that Crum waived the forfeiture as provided in the supplemental contract. The courts do not readily declare a forfeiture where the vendor has failed to take advantage of such provision in the contract, but continues to negotiate with the vendee. It appears from the facts that several days after the 15th of December Crum and Crudgington met in Hereford and discussed the question of the condition of the title in connection with Crum's attorney living in Hereford; that they had several conversations with reference to the matter, and it was agreed that Crudgington should go to Dallas and talk to a party there who could probably clear up the objections to the title; that together they undertook to sell the land to the International Land Company; and that these negotiations continued until March 1908, when Crum declared his intention of ending the matter.

The question of the waiver of the right to declare a forfeiture under a contract is ordinarily a mixed question of law and fact, but if upon another trial the evidence should be the same as appears in the record before us, we think the court should instruct the jury to find that the forfeiture, if any, was waived by Crum's subsequent conduct. Bower's Law of Waiver, §§ 46–56; Landrum v. Buford, 29 Tex. Civ. App. 62, 67 S. W. 1066; Hill v. Still, 19 Tex. 76, 84; Younger v. Welch, 22 Tex. 425.

The uncontroverted evidence in the record is that Crudgington was always ready, willing, and able to consummate the sale in accordance with the terms of the contract and the supplement, as soon as Crum perfected his title, and this is the principal inquiry in the case.

It appears that after the trade had been declared at an end Crudgington sued Crum to recover the $2,000 earnest money paid at the time of the execution of the contract. This suit was dismissed by a written agreement, and was offered in evidence and excluded by the court. A careful reading of the agreement convinces us that it has no bearing whatever upon any issue in the case, and the court did not err in excluding it.

Because of the peremptory instruction, the judgment is reversed, and the cause remanded.