## M. E. GRAY v. J. D. FUSSELL.

### Decided December 18, 1907.

**Homestead—Dedication—Evidence.**

In a suit by a married woman to recover certain lots claimed by her to have been dedicated as a homestead and sold by her husband without her consent and without her joinder in the deed, evidence considered, and held sufficient to raise the issue of title and dedication, and hence, a peremptory instruction for defendant was error.

Error from the District Court of Nacogdoches County. Tried below before Hon. James I. Perkins.

*Ingraham, Middlebrook & Hodges,* for plaintiff in error.—It is only where the state of the testimony is such that but one conclusion can be deduced from it by ordinary minds the question at issue becomes one of law, and the court is authorized to peremptorily instruct a verdict upon it. Merit v. State, 15 Texas Ct. Rep., 927.

When a party purchases land, knowing that his grantors had previously sold the land to another, it is such a fraud as to destroy the conveyance as a muniment of title. Eliot v. Whitaker, 30 Texas, 420, 421; Allen v. Root, 39 Texas, 599; Grigsby v. May, 84 Texas, 257; Henderson v. Beaton, 1 Posey, U. C., 33; Snowden v. Rush, 69 Texas, 595; Blum v. Rogers, 71 Texas, 677.

*Mims & Strong,* for defendant in error.

REESE, ASSOCIATE JUSTICE.—Mrs. M. E. Gray in this case sues J. D. Fussell in trespass to try title to recover lots 18 and 19, in block 74, in the town of Cushing. After plaintiff had introduced her evidence the court instructed the jury to return a verdict for defendant. From the verdict and judgment plaintiff appeals. Plaintiff in error by proper assignment of error complains of the action of the court in instructing a verdict for defendant in error.

Plaintiff's case is that the property in question had been bought by her husband, H. A. Gray, with whom she with her children was then living, for the purpose and with the intention of making it their homestead; that this purpose and intention had been carried out by the erection of a dwelling house upon the property and that H. A. Gray, before they moved into the house, had sold and conveyed it, without her consent or joinder, to defendant.

Defendant insists that the undisputed evidence showed that Gray had no title. Plaintiff claimed title under an alleged deed from Stephens to H. A. Gray. No deed was introduced in evidence to Gray for the property, but certain evidence was introduced by

plaintiff, which, it is claimed, was sufficient to show that such deed was executed.

Previous to June 9, 1904, one L. H. Baines was the owner of lots 18, 19, 20 and 21, in block 74, in the town of Cushing. Gray and wife had owned and had been occupying as a home certain other lots in the town, which on June 6, 1904, they sold and conveyed to one Martindale, but which they continued to occupy as tenants. Baines being a minor and given to trading, for convenience in conveying, the legal title to the lots was in his brother-in-law Stephens. The lots were unimproved. Gray contracted to buy the lots, and a deed was signed by Stephens and duly acknowledged, dated June 9, 1904, conveying them to him. It is contended by defendant that this deed was never in fact delivered, but that after it was signed it was left with one D. C. Baines, a notary public, who testified that the deed was not delivered on account of some trouble about the consideration. Here is where the parties part company so far as the evidence is concerned. The notary testifies that the deed was left with him and not to be delivered.

On September 3, 1904, lots 20 and 21 were sold and conveyed by Gray and wife to J. W. Chambers, and D. C. Baines testified that on the occasion of the making of the Chambers deed Stephens and Gray came to him and by their direction the deed of Stephens to Gray was changed so as to include only lots 20 and 21, sold to Chambers. The witness is not certain whether this change was effected by erasing lots 18 and 19 from the deed or by destroying the old deed and making another for lots 20 and 21. He has no idea what became of this deed. The evidence, however, shows that L. H. Baines received all of the cash which was to be paid by Gray, and that he also received the two notes for $100 each, executed by Gray secured by the vendor's lien on the four lots, and had disposed of both of them.

There is much confusion in the testimony with regard to the notes given by Gray to Stephens, and about the notes executed by Chambers to Gray for lots 20 and 21, those notes reciting that they are given in part payment of the purchase money of lots 18, 19, 20 and 21, and a vendor's lien is retained thereon. In the deed from Gray and wife to Chambers for lots 20 and 21, Chambers assumes the payment of the two notes given by Gray to Stephens, which, it is recited, "frees from all claim lots 18 and 19." The notes given by Chambers to Gray recite that they are given in part payment of lots 18, 19, 20 and 21. There is no claim by Chambers that he bought or that there was conveyed, or intended to be conveyed, to him lots 18 and 19. D. C. Baines attempts to explain that this was a mistake, but his explanation merely befogs the transaction.

Plaintiff testified that her husband gave her a deed to these lots, which she put in the bottom of her trunk, but which was taken from there without her knowledge, at least, when she looked for it it could not be found. The force of her testimony is greatly weakened by her statement that she did not read the deed, but only saw that it was signed by Stephens and wife. Her testimony is very indefinite, but it does appear that Gray gave her the paper as a deed

to these lots, and that she put it away. Whatever became of it is left in obscurity.

In February, 1905, H. A. Gray executed to defendant a deed for the lots in controversy for a recited consideration of $750 in cash. The deed is drawn to be signed by Mrs. Gray (plaintiff in error) also, and is dated January 31, 1905. It was signed and acknowledged by Gray, but plaintiff refused to sign, whereupon defendant took a deed from Stephens and wife to the two lots. This deed is not in the record. Immediately thereafter Gray deserted his wife and children, ran away with another woman, and has not been heard of since. Defendant did not testify.

We think this evidence raised the issue of the execution of the deed from Stephens to Gray. It may be very slight, and it may be that upon another trial some of the confusion hanging around this transaction may be cleared away, but as it stands now we think that the issue should have been submitted to the jury.

Unless the property had attached to it the character of homestead the deed of Gray to Fussell effectually conveyed the title. Upon this issue also the evidence is unsatisfactory, but on the whole we think raises that issue. It is made clear by the testimony of Martindale and plaintiff in error that the property was bought for the purpose and with the intention of making it the homestead of Gray and wife. It appears that in a very short time thereafter a dwelling house was erected on the lots, which was rented by defendant to one Hinsley. Plaintiff testified that Gray told her that he was working on the house, and when she was anxious to move into it he told her that he was letting Fussell have the rents for some material he (Fussell) had let him have. The testimony of Mrs. Gray as to what her husband told her was hearsay, but it was admitted without objection and is not without probative force. (Wigmore on Ev., sec. 10, p. 35; sec. 11, p. 37; Daniel v. Harvin, 31 S. W. Rep., 421.)

This evidence tended to show that by some arrangement with Fussell this house had been built by Gray or for him, and that Gray's purpose was to make it his home, and that this was done immediately after the purchase of the lots. Taking the entire evidence, we think it raised the issue as to whether the lots had been dedicated as a homestead at the time Fussell bought. (Gardner v. Douglass, 64 Texas, 77; Barnes v. White, 53 Texas, 631; Moreland v. Barnhart, 44 Texas, 280.) Once a homestead, the husband could not by a sale and abandonment in fraud of his wife destroy her homestead rights. (Newman v. Farquhar, 60 Texas, 644; Smith v. Uzzell, 56 Texas, 318.)

We are of the opinion that the issues should have been submitted to the jury. This was necessary if there was any evidence to support plaintiff's claim, no matter how weak its probative force, if it has the dignity of evidence at all. (Joske v. Irvine, 91 Texas, 582.) The judgment is reversed and the cause remanded.

*Reversed and remanded.*