HENDERSON & GRANT v. GILBERT.
(No. 669.)

(Court of Civil Appeals of Texas. Amarillo. Nov. 21, 1914.)

1. APPEAL AND ERROR (§ 262*)—RESERVATION OF GROUNDS OF REVIEW — EXCEPTIONS — "FUNDAMENTAL ERROR."

The failure of the court to submit a case to the jury, where there is sufficient testimony to authorize such submission is a "fundamental error"; and hence the giving of a peremptory instruction may be reviewed, though not excepted to, notwithstanding the act of the Thirty-Third Legislature (Acts 33d Leg. c. 59) relative to exceptions to instructions.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1582–1589, 1593–1595; Dec. Dig. § 262.*

For other definitions, see Words and Phrases, First and Second Series, Fundamental Error.]

2. BROKERS (§ 57*) — COMPENSATION — VARIANCE BETWEEN CONTRACT PROCURED AND CONTRACT AUTHORIZED.

Defendant on May 25th listed land with plaintiffs for sale, for a period of 60 days, the terms of sale to be "$23 per acre, 5 per cent., commission included, on basis of all cash," plaintiffs to have as compensation for their services all over the listed price. On July 8th they executed a contract of sale on behalf of defend-

ant for a consideration of "$14,720 ($23 an acre), less 5 per cent. commission," $1,250 to be paid at the signing thereof as earnest money, and the balance when the deed was delivered, December 1st. The contract required defendant to execute a deed within 15 days, which, with the earnest money, was to be placed in escrow until the title was approved. *Held* that, under the listing contract, the selling price was $23 an acre, plus the commission, and the commission was not a part of the $23, and hence the contract of sale which required the owner to accept $23 an acre, less the commission, was not authorized by the listing contract, nor was the sale made a cash sale within the listing contract, as the purchaser might wait until December 1st before paying the balance of the price, and hence, unless defendant ratified the contract of sale with full knowledge thereof, plaintiffs were not entitled to commission.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 66, 67, 72; Dec. Dig. § 57.*]

3. BROKERS (§ 49*) — EARNEST MONEY PAYMENT—CHECKS.

If one of a firm of brokers who executed on behalf of a purchaser a contract of sale executed by the firm for the vendor had a right to draw a check on a deposit by the purchaser, and if there was such a fund on deposit, and the check was an assignment of the amount thereof, his check placed in escrow with the contract was a sufficient deposit under the contract of sale requiring an earnest money payment to be placed in escrow with the deed until the title was approved.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 70–72; Dec. Dig. § 49.*]

4. BROKERS (§ 58*) — COMPENSATION — ENFORCEABILITY OF CONTRACT—NECESSITY.

To entitle brokers to commissions, a contract negotiated by them need not be enforceable, if the purchaser is ready and willing to perform it and the sale is defeated by the owner.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 90; Dec. Dig. § 58.*]

5. BROKERS (§ 49*)—COMPENSATION—OPTION OR SALE.

In a contract for the sale of land made by brokers, providing for an earnest money payment to be placed in escrow until the title was approved, and that, if the purchaser should fail to comply with the contract, the earnest money should be declared forfeited and paid over to the vendor, the forfeiture clause did not render the contract a mere option, rather than a sale.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 70–72; Dec. Dig. § 49.*]

6. BROKERS (§ 58*)—COMPENSATION—ACTING FOR BOTH PARTIES.

A contract of sale made by brokers was not void because one of the brokers executed it for the proposed purchaser, if he acted in good faith and with fairness towards the vendor, and the vendor knew that he was acting for the purchaser.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 90; Dec. Dig. § 58.*]

7. BROKERS (§ 57*)—COMPENSATION—AMOUNT — RATIFICATION OF UNAUTHORIZED CONTRACT.

Where brokers authorized to make a sale of land for $23 an acre, plus their commission, made a sale under which their commission was to be deducted from the purchase price of $23 an acre, if such contract was ratified, they were entitled to the agreed percentage on the purchase price.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 66, 67, 72; Dec. Dig. § 57.*]

Appeal from District Court, Hale County; L. S. Kinder, Judge.

Action by Henderson & Grant against C. L. Gilbert. From a judgment for defendant, plaintiffs appeal. Reversed and remanded.

L. C. Penry and Randolph & Randolph, all of Plainview, for appellants. Mathes & Williams, of Plainview, for appellee.

HUFF, C. J. The appellants, Henderson & Grant, instituted this suit against C. L. Gilbert for the sum of $736, and interest, alleged to be due appellants as commission for the sale of land belonging to appellee. We adopt the following statement as to the appellants' pleadings from their brief:

"Plaintiffs allege necessary facts showing agency under written contract to sell said land within 60 days from May 25, 1912, at a stipulated price, on the 'basis of all cash,' for which services plaintiffs were to receive 5 per cent. of the consideration therefor; that sale was made to Pacific Security Company for the price specified, to be paid on delivery of the title 'on or before' December 1, 1912, said sale being evidenced by contract signed by said firm of Henderson & Grant for defendant, and by M. V. Henderson, one of said firm, for the purchaser, dated July 8, 1912, which contract provides that the deeds shall be made to any person said Security Company might designate; that a copy of said sales contract last referred to was at once delivered to defendant, and no objection was urged thereto by defendant, but, on the contrary, defendant proceeded to carry out its provisions by submitting his abstracts for examination to the attorneys designated in said contract; the title was directed to be taken in the name of certain persons as trustees, said direction being made before the listing contract expired; that the purchaser so secured was ready, able, and willing to take and pay for said land. Plaintiffs also alleged a right of recovery upon the ground that, as agents for defendant, they sold the land at the price fixed by defendant to H. C. Randolph and J. H. Slaton, trustees, who were ready, willing, and able to take and pay said price for said land in cash, and that usual and reasonable compensation for such services and the reasonable value thereof was $736; that defendant was advised of the sale and terms thereof, and that he made no objection thereto, but proceeded in part to execute the same by delivering the abstract for examination; that afterwards defendants refused to close the deal and convey the land without lawful excuse therefor, and prays for judgment."

The defendant answered the petition, which is not necessary, as we deem it, to set out. We state the facts from the appellants' view point alone, as the trial court instructed a verdict for appellee.

On the 25th day of May, 1912, the appellee, Gilbert, listed the land in question with the appellants, designating the instrument a "listing contract," which has the following provision:

"I hereby constitute and appoint Henderson & Grant my authorized exclusive agents, and list for sale for a period of 60 days from date the land." (Then follows the description.) "The terms of sale for the above-described property to be as follows: $23 per acre, 5 per cent. commission included on basis of all cash. It is further agreed that I will execute deeds conveying to the purchaser of said land and furnish a

complete abstract showing clear title to said property whenever sold, and to allow Henderson & Grant, my authorized agents, as compensation for their service, all over and above listed price as their commission for furnishing the purchaser or making the sale," and giving the agents one-half of any money put up as a forfeit should the proposed purchaser forfeit it, and authorizing the agents to sign contracts of sale for him upon the above basis and terms.

On the 8th day of July, 1912, Henderson & Grant, acting as agents for appellee Gilbert and M. D. Henderson, acting as the agent of Pacific Security Company, entered into a contract for the sale of the land, by which appellee agreed to convey to the Pacific Security Company, or to any one it might direct, by a good and sufficient deed, with good merchantable title, the land in question, which contained 640 acres, "for a total consideration of $14,720, less 5 per cent. commission, to be paid as follows: $1,250 at the time of signing thereof as earnest or forfeit money, to bind this contract and to constitute a part of the cash payment, if the trade is fully consummated, and $13,450 additional to said earnest money to make the full cash payment when deed is delivered December 1, 1912." Gilbert was given thereby 15 days from that date to furnish abstract, which was to be approved by H. C. Randolph, the company's attorney, within 15 days of its delivery to him, Randolph. Gilbert was to execute a deed within 15 days from the date of the contract to the company or to any one it should direct. The deed and earnest money to be placed in a named bank in escrow to be held until the title was approved, the company agreeing to pay full cash payment and execute notes as above provided; "it being fully understood and agreed that the closing up of this contract and the making of the full cash payment shall be on or before December 1, 1912; it being understood that, if said second party (the company) shall fail or refuse to comply with the terms of this agreement within the time specified, then the earnest money put up shall be declared forfeited, and the bank is hereby authorized to pay over the same to the said first party (Gilbert) or his authorized agent as full liquidated damages;" but, if title was not good, the money should be returned to the company. The evidence of the appellants tends to show that, immediately upon the execution of the contract for the sale of the land, they mailed a copy of that contract, together with a letter of date July 8, 1912, to the appellee, in which they informed him that they had made the contract of sale securing all cash December 1, 1912, with a handsome forfeit to make the contract good, and appellee to retain the crops on the place for that year. On July 31, 1912, appellants mailed a deed and the opinion of the selected attorney on the title, asking that he (appellee) execute the deed inclosed. The title was pronounced good, except the failure to produce interest receipts from the state of

Texas, and appellee was requested to furnish such receipts. On the 13th day of July, 1912, the appellee delivered to Randolph, the attorney for the company, an abstract of title to the land for his examination. The abstract showed that it had been brought down to July 12th, the day previous. Gilbert received the letters above mentioned and the copy of the contract. The deed prepared and sent to appellee conveyed the land to Randolph and Slaton, as trustees, and was prepared to be signed by Gilbert and his wife. Gilbert took the deed and went to the office of Randolph with it, and informed Randolph that it was not necessary that he and his wife sign it. Randolph explained why his wife should sign the deed, but appellee declined to have the deed so executed at that time. Some time afterwards a deed was sent to him to be signed by himself alone. This Gilbert refused to execute. The appellants show that the company had authorized Henderson to make such a contract for it and that it had another agent, however, to examine and pass upon the quality and value of the land; that the company then had on deposit $300,000, for the purpose of placing up forfeit money on contracts of this kind, and that before December 1, 1912, had a million dollars on deposit to pay for lands contracted to be purchased—this land, amongst others. It directed that the land be deeded to Randolph & Slaton, as trustees for it. The testimony tends to show that the company, as well as the trustees, were ready, willing, and able to take and pay for the land by December 1, 1912. The evidence further shows that the actual cash was not put up in the bank with the contract, but that Henderson's check for $1,250 was attached to the contract and placed in the bank as specified in the contract of sale, and tends to indicate that Henderson had the right to check on the $300,000 deposited in the bank by the company to secure forfeiture stipulations in the contracts.

[1] At the conclusion of the evidence, the trial court instructed a verdict for Gilbert, the appellee. In this case the appellant did not except to the charge of the trial court peremptorily instructing a verdict, on the ground that there was testimony tending to prove ratification of the contract made by the agents. The appellee in this case objects to the assignments of error of the appellants on that ground. This court has heretofore held that, where the trial court peremptorily instructs a verdict, when there is testimony authorizing the submission of the case to the jury, that it is not necessary to file an exception to the charge of the court so given under the amendments to the statute with reference to instructions by the Thirty-Third Legislature (Acts 33d Leg. c. 59); that, if there is sufficient testimony authorizing the submission of a case to the jury, a failure to do so would be fundamental error, and for

that reason it is not necessary to except to the charge of the court. The statute as amended it is not believed by us was intended to apply to cases of that kind, but only to instructions where from informality or for failure to properly charge the law of the case, and then exceptions should be taken as pointed out in the statute. At any rate, we have concluded to consider the case upon the assignments presented.

The first assignment complains of the action of the court in instructing a verdict for the appellee, because it is insisted that the evidence with reference to ratification was sufficient to raise that issue, and should have been submitted to the jury for their findings.

[2] Without noticing further the assignments of appellants, we shall give our views upon the case as presented by the record. We have reached the conclusion that the contract of sale was not authorized by the contract of agency in at least two particulars: The contract appointing appellants as agents has the stipulation: "The terms of sale for the above-described property to be as follows: $23 per acre, 5 per cent. commission included on a basis of all cash." It further provides for the compensation of the agents which was "all over the above listed price as their commission for furnishing the purchaser or making the sale." In the contract of sale the appellee agreed to convey the land for the total consideration of $14,720, less 5 per cent. commission. $14,720 for 640 acres of land is exactly $23 per acre. The purchaser therein agreed to pay the consideration $1,250 at the time of signing the contract, and $13,450, "the full cash payment, when deed is delivered December 12th." The amount $13,450 is evidently a mistake. It should be $70, instead of $50. It is pleaded as a mistake, and the proof sustains the plea. The agents were not authorized to sell for less than $23 per acre and to contract that the owners should take less. We think that the list price, as evidenced by the contract, is $23 per acre, and 5 per cent. commission included. It is $23 plus 5 per cent. and not minus 5 per cent. This conclusion is rendered reasonably certain by the clause following, which stipulates the agents were entitled as compensation to "all over the above list price." They were not entitled to any compensation under the contract, unless they received something over that price. The listed price of the land was $23, but the 5 per cent. commission was to be included in the terms of sale, and all over the list price, $23, the agents were entitled to as compensation. In making the contract of sale the agents obligated Gilbert to take $1.15 per acre less than he authorized them to sell the land for. True, the contract obligates the purchaser to pay $23 per acre, but by the contract Gilbert does not get that amount, but the 5 per cent. is taken from the amount as the com-

mission. Under the instruments in evidence, clearly this was not the agreement. Whether the commission was to be added to the $23 or compose only a part of that amount, if the amount of 5 per cent. was deducted, it was not in either event in accordance with the agreement; but, as above suggested, we think the agency contract clearly contemplated that the agents were required to include 5 per cent. with the $23 per acre, and not as part of the $23. Under the contract of sale, the purchaser paid the $23 per acre, but Gilbert took $1.15 less for the land than he listed it, thereby paying the commission to the agent out of the price asked by him, and not out of the amount over the list price.

Again, the consideration was to be all cash, and we do not consider the sale so made. The $1,250 was paid down; the residue was payable on or before December 1, 1912—more than 4 months from the date of the contract. If the deed had been delivered within a day or 30 days, appellee could not have forced a payment of the residue before December 1, 1912. It was optional with the purchaser to pay before that date or wait until the last day. The agents executed a contract in the name of the owner, thereby binding him to sell on at least 3 or 4 months' credit. The agents were not authorized to make such a contract. Gough v. Coffin, 55 Tex. Civ. App. 550, 120 S. W. 210; Colvin v. Blanchard, 101 Tex. 231, 106 S. W. 323; Pryor v. Jolly, 91 Tex. 86, 40 S. W. 959; Evants v. Fuqua, 102 Tex. 430, 118 S. W. 132, 132 Am. St. Rep. 854; Id., 50 Tex. Civ. App. 201, 111 S. W. 675; Hagler v. Ferguson, 102 Tex. 432, 118 S. W. 133, 132 Am. St. Rep. 895; Id., 50 Tex. Civ. App. 191, 111 S. W. 673. From the authorities and our construction of the contract in question, the appellants cannot recover, unless, after the execution of the contract, with full knowledge thereof, the owner ratified the sale as made by the agents. Wilson v. Burch, 162 S. W. 1018; 2 Wilson, Civ. App., § 593; Thornton v. Moody, 24 S. W. 331; Evans v. Gay, 74 S. W. 575; McDonald v. Cabiness, 100 Tex. 615, 102 S. W. 721; Id., 98 S. W. 943.

[3] We have concluded the facts in this case raise the issue of ratification and are sufficient to take the case to the jury. Whether the check was cash or not, and whether the appellee knew that the check was so placed, we think also a question of fact. If Henderson had the right to draw the check on the fund deposited in the bank, and at that time there was such a fund on deposit, and if the check was an assignment of the amount thereof, we think that such facts, if so found, would be sufficient to show a deposit as called for by the contract of sale.

[4] Whether the Pacific Security Company could make a binding contract or not is not

here so presented by the record as would authorize a holding on that question. If properly presented, it would be an interesting question. The appellants contend the company selected two trustees to whom the deed was to be executed and who were authorized and had the money to pay on the land according to the contract, and that they were ready, willing, and able to do so. If it should be held that the contract by the Pacific Security Company was not an enforceable one, because the company was a nonresident, or because not known whether incorporated or a partnership or the like, such question became immaterial; and if appellee had offered to complete the trade, and the purchaser or trustee designated had refused on their part, then—

"in such case there would have been neither a willingness to buy nor an enforceable contract to buy; one or the other of which conditions would be essential to the broker's right to compensation. But the latter condition (enforceable contract) is not essential where the first exists (willingness), and the sale is defeated by the owner of the property. The question whether or not the plaintiff performed the services called for by the contract is not wholly dependent upon the writing executed between the owners of the property and the proposed purchaser. The fact that the latter really was willing and able to buy, and would have bought, notwithstanding he was at liberty not to do so, had he not been prevented by the defendants' failure to produce proper evidence of title, must be regarded as controlling, and as dispensing with the necessity of a binding contract to purchase, which might otherwise have existed." Hamburger v. Thomas, 103 Tex. 280, 126 S. W. 561.

[5] It is urged by the appellee that the forfeiture clause rendered the contract not one of sale, but that it was an option given to the proposed purchaser. We believe this case falls under the rule announced in the case of Moss v. Wren, 102 Tex. 567, 113 S. W. 739, declared in the original opinion, and is not such a contract as falls under the opinion of the Supreme Court in the above case upon rehearing. 102 Tex. 567, 120 S. W. 840; Heath v. Huffhines, 152 S. W. 176. The case of Crum v. Slade, 154 S. W. 352, when rightly understood, is to the same effect. If the purchaser was ready and willing to perform the contract, then, under the rule announced in the case of Hamburger v. Thomas, supra, it would not be essential that the contract was enforceable, if the sale was defeated by the owner of the property.

[6] The contract of sale would not be void if the appellee knew that Henderson, who was then a member of the partnership agency of Henderson & Grant, was, at the time of making the contract, acting for the proposed purchaser, if he acted in good faith and with fairness towards the appellee in the transaction. Upon the record in this case, we do not feel justified in declaring, as a matter of law, because he (Henderson) was acting for the seller and purchaser, that the contract for that reason is void.

[7] The question of quantum meruit is presented by the pleadings in this case. It is doubtful whether the facts are sufficient to authorize the submission of that issue. We do not deem it necessary to decide that question at this time, and we are not fully agreed upon this issue. If the $23 per acre was the list price, and the agents were to have all over that sum as compensation for their services, and the contract for the sale of the land having been made for that amount or less, it is suggested nothing was due the agent, whether or not the trade was consummated. The appellants, by the contract, had earned nothing, and the appellee's refusal to make the deed lost them nothing. The following cases, and others, appear to support this theory: McCarty v. Bristow, 145 S. W. 1029; Evans v. Gay, 74 S. W. 575. This, however, is not deemed necessary to a decision of this case, as we view it. If the jury shall find that appellee ratified the contract of sale, then by the contract he was to have $14,720, less 5 per cent. commission; the purchaser was to pay the full sum of $14,-720. There was therefore $736, as commission stipulated for in the contract, which both appellee and appellant recognized as being provided for in the contract. Under the contract, if ratified, appellants would be entitled to that sum.

We think the court was in error in refusing to submit the question of ratification to the jury, and for that reason the case is reversed and remanded.