TAYLOR et al. v. DAVIS et al. (No. 1815.)

(Court of Civil Appeals of Texas. Amarillo. Oct. 12, 1921.)

1. Trial ⟨⟩359(1)—Findings of jury on special issues not set aside.

Where a cause is submitted on special issues and verdict for defendant is supported by answers to several issues, the trial court could not lawfully render a judgment for plaintiff on the verdict.

2. Judgment ⟨⟩199(3)—Where cause is submitted on special issues and verdict is sustained by answers, judgment n. o. v. cannot be entered.

Where a cause is submitted on special issues and verdict for defendant is sustained by answers to the issues, trial court could not set aside verdict and enter judgment non obstante veredicto on theory that findings were against uncontroverted evidence.

3. Appeal and error ⟨⟩294(1)—To review sufficiency of evidence, motion for new trial necessary.

The sufficiency of the evidence to sustain findings of the jury is not a matter which can be considered as fundamental error, but must be raised in motion for new trial.

4. Brokers ⟨⟩82(4)—Pleading held not to authorize recovery on theory of defect of title.

Petition, in action for commissions of broker, alleging that purchaser procured was ready, able, and willing to buy, but defendant refused to sell, does not authorize recovery on theory that failure of the sale was caused by defects in defendant's title.

5. Trial ⟨⟩350(4)—Special issues as to revocation of agency held supported by the evidence.

In broker's action for commissions in procuring purchaser for land, special issues submitting question of revocation of authority and withdrawal of land from sale and good faith therein held under the evidence properly submitted.

6. Witnesses ⟨⟩388(2)—Predicate for impeaching testimony necessary.

Admission of evidence only admissible to impeach witness by contradictory statements is error, where no predicate is laid for its introduction.

7. Appeal and error ⟨⟩1052(7)—Admission of evidence held harmless in view of determination of jury.

Where, in an action for broker's commissions, jury found that agency was revoked and land withdrawn from sale, on sufficient refusal of purchaser to buy because of existence of oil lease on the land, and there was no claim that purchaser would buy land with oil lease on it, error in the admission of evidence as to statements of purchaser that he would not buy land with oil lease thereon is harmless.

Appeal from District Court, Gray County; W. R. Ewing, Judge.

Action by W. A. Taylor and others against M. B. Davis and others. Judgment for defendants, and plaintiffs appeal. Affirmed.

Hoover, Hoover & Willis, of Canadian, for appellants.

C. C. Cook, of Pampa, and Kimbrough, Underwood & Jackson and B. D. Kimbrough, all of Amarillo, for appellees.

BOYCE, J. This suit was brought by appellants Taylor and others to recover of M. B. Davis and D. C. Davis commissions alleged to have been earned by procuring a purchaser ready, willing, and able to buy defendants' land under the terms of enlistment thereof with the plaintiffs. Judgment was rendered for defendants on a verdict of the jury, and plaintiffs have taken this appeal.

The plaintiffs, in their petition, set out the contract of enlistment, and allege that they had procured a purchaser in the person of J. J. Taylor, who was ready, willing, and able to purchase the land listed on the terms of the enlistment contract, and that defendants refused to accept the purchaser and consummate the sale. The defendants answered, admitting in effect the listing and that in consequence of plaintiffs' efforts negotiations were opened with J. J. Taylor for the sale of the land, who orally agreed to buy it, but alleging that when the parties met on the following day for the purpose of preparing the written contract evidencing the sale, the said J. J. Taylor refused to enter into the contract, on the ground that he had just learned that there was an oil lease on said land; that he at such time requested a five-day option on the land, which the defendants refused to grant and gave notice that unless he would enter into the contract at once the land was off the market; that the said Taylor refused to buy said land at such time, and it was withdrawn from sale, and the plaintiffs so understood. The answer further alleged that the plaintiffs and Taylor both knew of the existence of the oil lease on the land before entering into such negotiations, and that Taylor's refusal to purchase on account of such lease was a pretext to evade carrying out his oral promise to purchase; that Taylor did, after the close of such negotiations, pretend to desire to enter into further negotiations for the purchase of said land, but defendants refused to consider such matter because they had withdrawn the land from the market; that the plaintiffs knew of the existence of the oil lease assigned by J. J. Taylor as his reason for his refusal to enter into the contract and were required to inform said Taylor of the existence of the same, and by their failure to do so the defendants were prevented from making the sale.

The plaintiffs, in a supplemental petition, alleged that they did not know of the exist-

⟨⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

ence of the oil lease on the land until it was discovered by Taylor after he had orally agreed to purchase; that the said Taylor did not refuse to buy on account of such lease, but merely asked for time to examine into the nature of the oil lease; that the defendants agreed to grant such time, and before the time fixed for a decision, and without any revocation of plaintiffs' authority, the purchaser, Taylor, offered to accept said land with the oil lease on it, but defendants then refused to sell.

The case was submitted to the jury on special issues, and as the findings of the jury in response thereto were not attacked by the plaintiffs in their motion for a new trial, except as hereinafter stated, we adopt the findings of the jury as the facts established on the trial, with such additional statement as we may make in the consideration of the assignments presented. The issues submitted and the answers of the jury are as follows:

"Question No. 1. Did the plaintiffs find a purchaser for defendants' land, in the person of J. J. Taylor, who was ready, willing, and able to buy defendants' land on the terms and conditions he authorized plaintiffs to sell the same? Answer: No.

"Question No. 2. Did the defendants and J. J. Taylor enter into negotiations that would finally have resulted in the consummation of a sale of defendants' land to J. J. Taylor on the terms and conditions offered by defendants if defendants had not withdrawn their land from sale and refused to close the deal, if you find and believe from the evidence that the defendants did withdraw their land from sale and refuse to make the deal? Answer: No.

     *      *      *      *      *      *

"Question No. 4. Was defendant J. J. Taylor ready, willing, and able to purchase defendant's land on the terms and conditions he authorized plaintiff to sell the same, and would he have so purchased same had defendants not withdrawn said property from sale, if you find and believe from the evidence they did withdraw the same from sale? Answer: No.

"Question No. 5. After J. J. Taylor and defendants had entered into negotiations for the sale of said land, did the defendants revoke plaintiff's authority to sell said land and withdraw said land from the market and refuse to consummate a sale thereof? Answer: Yes.

"Question No. 6. If you have answered question No. 5 in the affirmative, then state whether the action of defendants, in revoking plaintiffs' authority to sell said land and taking the land off the market and refusing to sell same to J. J. Taylor, was done in good faith and without any intent to defraud the plaintiffs out of the commission from the sale thereof? Answer: Yes.

     *      *      *      *      *      *

"Question No. 8. During the negotiations between defendants and J. J. Taylor, did J. J. Taylor ask defendants for an extension of time within which to close the trade for the land? Answer: Yes.

"Question No. 9. If you have answered the preceding interrogatory, 'Yes,' then state whether or not the defendants agreed to grant such extension of time? Answer: No.

"Question No. 10. Would J. J. Taylor, on Saturday after the meeting of the parties in plaintiffs' office, in Pampa, have closed the deal for and purchased the defendants' land, notwithstanding the oil lease on same? Answer: Yes.

"Question No. 11. At the time Lee Banks showed the land in person to J. J. Taylor, did he (Lee Banks), W. A. Taylor, or W. B. Saulsbury, have actual knowledge of the existence of an oil lease then on said land? Answer: No."

Special issue No. 1, requested by plaintiffs: "Did the defendant make an agreement with the Pampa Land Co., plaintiffs, asking through Lee Banks, authorizing said company to sell his land to J. J. Taylor and promise to pay said agents a five per cent. commission therefor? Answer: Yes."

Special issue No. 4, requested by defendants: "Did defendants and J. J. Taylor enter into negotiations that would finally have resulted in the consummation of the sale of defendants' land to J. J. Taylor on the terms and conditions offered by defendants and subject to the existing oil lease thereon, if defendants had not withdrawn their land from sale and refused to close the deal, if you find and believe from the evidence that the defendants did withdraw their land from sale and refuse to make the deal? Answer: No."

Special issue No. 7, requested by defendants: "Did J. J. Taylor, at any time between the time of the conference between him and the defendants in Pampa, Tex., on the Thursday mentioned in evidence and the following Saturday night, change his mind and agree to buy defendants' land according to the terms it was listed with the plaintiffs for sale, subject to the existing oil lease? Answer: No."

The plaintiffs made a motion for judgment on the verdict on the ground that it appears from the findings of the jury that the sale only failed by reason of a defect of defendants' title, unknown to plaintiffs, and it further appeared from the evidence that Taylor had agreed to take the land before he learned of the oil lease. This motion was overruled and judgment entered for defendant.

[1-4] The first assignment complains that the court erred in not rendering judgment for the plaintiffs on the verdict of the jury upon their motion therefor. The ground on which this contention is made is that the undisputed evidence shows that the existence of the oil lease on the land caused the failure of the sale to Taylor and that he was ready, willing, and able to buy the land but for the existence of such defect in the title, unknown to him and to the plaintiffs until the meeting of the parties on the Thursday referred to, for the purpose of entering into writing evidencing the contract. There are two sufficient reasons for overruling this assignment: In the first place, such a judgment would have been contrary to the verdict of the jury in their answers to several of the issues submitted and the trial court could not have lawfully entered such judgment. It is suggested in the assignment that these findings are against the uncontroverted evidence and

should be set aside, but the trial court could not set aside the verdict of the jury and enter judgment non obstante veredicto. Scott v. Farmers' National Bank, 66 S. W. 485. We cannot consider the assignment as an attack on the verdict of the jury and enter into the consideration of the question as to whether we should reverse the case because the findings are not supported by the evidence. Scott v. Farmers' National Bank, supra. As already stated, the assault on the findings of the jury is made incidently as a reason why judgment should have been rendered for the plaintiffs on their motion. The specific error assigned is that—

"The court erred in' not rendering judgment in favor of the plaintiffs upon their motion therefor under the issues as found by the jury, and therefore the judgment is fundamentally erroneous."

The sufficiency of the evidence to sustain the findings of the jury is not a matter which can be considered as fundamental error, but must be raised in the motion for new trial. Scott v. Farmers' National Bank, supra; Houston Oil Co. v. Kimball, 103 Tex. 94, 122 S. W. 533; 124 S. W. 85. In the second place, the plaintiffs' pleadings did not authorize a recovery on the theory that failure of the sale was caused by a defect in defendants' title. They pleaded both in their original and supplemental petitions that the purchaser was ready and willing to consummate a purchase of the land but the defendants refused to sell. They do not allege that the purchaser refused to buy because the title was defective. It has been held by the Supreme Court, Breckenridge v. Claridge, 91 Tex. 534, 44 S. W. 819, 43 L. R. A. 593, that if a sale is not consummated because of a defect in the seller's title, the broker, in a suit to recover his commissions, has the burden of establishing such fact. It follows that if he relies on such fact for recovery he must also plead it. Plaintiffs' petition shows that they were not proceeding on this theory at all for the recovery sought.

[5] The second assignment complains of the submission of issues 5 and 6. We think the evidence warrants the submission of the issues. The enlistment was secured in reference to a particular purchaser, though his name was not mentioned, plaintiffs representing that they had a man who they thought would buy the land. J. J. Taylor was immediately produced as this man and entered into negotiations which came to a culmination on a certain Thursday mentioned in the evidence. At this time Taylor wanted further time to consider the purchase, and while the evidence on this point is conflicting, it is such as to warrant a finding that Davis at this time told Taylor and the plaintiffs that the sale would have to be closed then or not at all, and that the land would thereafter be off the market. The trade was not closed at such time, and when, on the Saturday following, plaintiffs and Taylor expressed a desire to enter into further negotiations, the defendants refused.

[6, 7] The third assignment complains of the admission in evidence of a statement made by J. J. Taylor to the witness Williams, to the effect that he (Taylor) would not buy any land with an oil lease on it and had refused to buy Davis' land because of the existence of an oil lease thereon. This evidence was only admissible, we think, in impeachment of Taylor's evidence, to the effect that on Saturday, after negotiations on Thursday already mentioned, he had decided to buy the land with the oil lease on it and went out to Davis' place for the purpose of offering to do so. No predicate was laid for the introduction of the impeaching evidence, and we think its admission was error. However, we do not think the error requires a reversal of the case under the condition of the record. There is no claim that Taylor was willing to take the land with the oil lease on it at the time of the negotiations of Thursday. Now the jury found that at the breaking up of the negotiations on said day the defendants, in good faith, withdrew the land from sale. The issue of Taylor's willingness to take the land at any subsequent date, therefore, became immaterial, and the admission of the evidence under the circumstances is harmless.

We find no reversible error, and the judgment will be affirmed.

⬸For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes