**TATE v. MORRIS, GRAHAM & MORRIS.**
(No. 10080.)

(Court of Civil Appeals of Texas. Fort Worth. Dec. 16, 1922. Rehearing Denied Feb. 10, 1923.)

1. **Vendor and purchaser** ⟨key⟩3(4) — **Contract for sale of realty held option merely.**

A contract for the sale of realty, which provided that the purchaser should, as part consideration, convey to the vendor certain land in another county, which land should be forfeited to the vendor and the contract become null and void if the purchaser failed to make certain improvements upon the land purchased, *held* not an absolute contract of purchase, but an option merely.

2. **Brokers** ⟨key⟩49(1)—**When broker entitled to commissions for finding purchaser stated.**

To be entitled to commissions, a broker employed to find a purchaser for land must procure one who actually completes the purchase on terms satisfactory to vendor, or secure from a proposed purchaser who is ready, able, and willing to buy, on terms acceptable to vendor, an enforceable contract in writing to purchase.

3. **Brokers** ⟨key⟩86(1)—**Brokers held to have sustained burden of showing that vendor's title was defective, preventing consummation of contract.**

In a brokers' action against their principal for commissions for finding a purchaser for the principal's land, where the principal and the prospective purchaser had entered into an optional contract for the purchase of the land, wherein the principal agreed to furnish an abstract of title, but the purchaser failed to complete the purchase on account of alleged defects therein, and not because the contract merely amounted to an option, evidence *held* to sustain the burden of proof resting on plaintiffs to show that the vendor's title was in fact defective.

4. **Trial** ⟨key⟩105(2)—**Testimony of attorney examining title held competent, in absence of objection, to show defects therein.**

In a brokers' action for commissions for finding a purchaser for defendant's property, the contract of purchase not having been consummated because of defects in the vendor's title, testimony of the purchaser's attorney that he had examined the title and found defects therein *held* competent, in the absence of objection.

Appeal from District Court, Tarrant County; Ben M. Terrell, Judge.

Action by Morris, Graham & Morris against W. L. Tate. Judgment for plaintiffs, and defendant appeals. Affirmed.

W. F. Young, of Fort Worth, for appellant.

W. D. Nicholson, of Fort Worth, for appellees.

CONNER, C. J. The appellees, Morris, Graham & Morris, a real estate firm, sued W. L. Tate to recover $875 alleged to be due them as commissions for having procured a buyer, ready, able, and willing to purchase certain property situated near the city of Fort Worth, Tex., which had been listed with the plaintiffs for sale at the price of $17,500. The defendant, W. L. Tate, pleaded general denial.

There was evidence in behalf of the plaintiffs that the defendant, Tate, listed with them the property referred to, agreeing to give a commission of 5 per cent.; that the plaintiffs found as a prospective purchaser Mr. J. E. Cockrell, and introduced him to the defendant; and that the two thereafter entered into a written contract embodying the terms of the sale. A trial before the court without a jury resulted in a judgment for the plaintiffs in the sum they sought to recover, and the defendant has duly appealed.

In the contract entered into between Tate and Cockrell, defendant acting in the name of A. F. Drysdale and wife, Effie Drysdale, as parties of the first part, who held the legal title to the property mentioned in trust for the defendant, it was provided that—

"In consideration of seventeen thousand five hundred and no/100 dollars ($17,500.00) to be paid to first parties (Drysdale and wife) by second parties as hereinafter provided, first parties contract and obligate themselves to sell and convey by warranty deed to second parties the following described tract or parcel of land situated in Tarrant county, Tex."

Then follows a description of the premises constituting the subject-matter of the contract. The contract further provided that

Cockrell should purchase, and that of the consideration specified "$3,500.00 shall be paid by the conveyance by second parties to first parties of lot 6 in block 12 in the town of Alice, Jim Wells county, Tex., on which is located a ten-room frame dwelling house and other improvements, which property the second parties agree and obligate themselves to convey to first parties by general warranty deed and the title to said property is to be conveyed to first parties free and clear of any debts or liens save the taxes for 1920." The remainder of the consideration was to be evidenced by five vendor's lien notes in the sum of $1,000 each, and payable at dates specified in the contract. The contract further provided that the parties of the second part were to furnish an abstract of title to the property in Jim Wells county, and the first parties were to furnish an abstract of title to the property in Tarrant county. The contract had this further provision, to wit:

"As further consideration for the said Tarrant county property, second parties agree to make the following repairs on it within ninety days from this date, to wit, to construct and place across front of said property an iron fence and to paint with two coats of paint all outside woodwork, repair the leaks in the floor, paint with one coat of paint all inside woodwork, replace all broken window lights, repaper all rooms, put in bath and toilet fixtures, and make all needed repairs on outbuildings."

The contract further provided that the deed to the Jim Wells county property should be executed and delivered upon the approval of the title thereto by the attorney of the parties of the first part, and that the deed conveying the Tarrant county property should be executed and delivered when the vendor's lien notes had been executed and delivered, and the improvements on said Tarrant county land had been made and completed at the expense of the second parties. The contract contained this further provision:

"Should the said second parties fail to make said improvements within the time as agreed upon, then they shall forfeit to the first parties the said Jim Wells county land and this contract become null and void and the deed executed by first parties and placed herewith shall be returned to them and second parties obligate themselves to voluntarily surrender to first parties the possession of said land and premises and the abstract of title thereto upon demand made by first parties."

There were several other provisions not thought to be material to our disposition of the case.

J. E. Cockrell, introduced as a witness in behalf of the appellees, testified in substance, that the appellees had negotiated with him for a sale or exchange of the property in Tarrant county owned by appellant, Tate, and that he had talked the matter over with Tate, the negotiations resulting in the written contract that we have described; that the defendant furnished an abstract of title to the Tarrant county property which was submitted to his (Cockrell's) attorney, who objected to the title, specifying in a written opinion the objections thereto. Cockrell further testified:

"The reason that I did not execute the deed to the Jim Wells county property and execute the notes to Mr. Tate was on account of the fact he had no title to his property, and my attorney turned it down; my attorney turned this title down, and I went to him with this opinion, and he completely refused to try to fix it, and he said he would not be out any more money on it. So, of course, there was no necessity of my making any deed to my property. That was the only feature that blocked the deal, so far as I know."

He further testified:

"I was able, ready, and willing to buy that property, and I so informed Mr. Tate. I held myself at all times ready, able, and willing to buy that property at that price. * * * I told him that I was ready, able, and willing to sign the vendor's lien notes and put them up in escrow, according to the contract. I was ready and willing at all times. I do not think there was any deed made to the Jim Wells county land, I do not think there was; that is my best recollection. We had not gotten to that."

The abstract of title to appellant's property was not offered in evidence, but Mr. Trammell, the attorney to whom the same had been submitted by Mr. Cockrell, testified, among other things, that he was a practicing attorney of the Fort Worth bar, and that he examined the abstract of the Fort Worth property for Mr. Cockrell. He further testified:

"I remember about some defects in the title. I turned the title down, and some of the defects I did not think could be cured without several quitclaim deeds and perhaps a suit. * * * My recollection about the matter is, although I may be mistaken about it, that there was some people in Comanche county connected with it, and that this property went through an estate in Comanche county. I would not have considered the title a merchantable title. * * * I do not think there was any suit pending involving the title. There was a lien against the title, in this way, as I recall it—I may not get it correctly, but the land was conveyed, as I recall it now, subject to a lien, and the original maker of the lien had been unable to pay any part of the debt, and I think he had been sued on it, but that may have been cleaned up at the time I examined it; I am not sure, but I required a release along that line. * * * There was nothing in the face of the record to show any adverse claim or hostile claim or actual active controversy over the title. These matters that I have referred to were apparent from the abstract and were due to inaccurate methods of handling or dealing with the title

by people who had dealt with it theretofore. * * * My recollection is now that I thought the sale in probate was void. * * * Somewhere in the title some person had been appointed executor and had qualified as an administrator. He had been appointed and qualified under the will and gave bond, and then took the oath as an administrator. Now, of course, that was only one defect, and I do not think that I went so far as to conclude that that would absolutely invalidate the transaction; but, of course, you understand in making a sale of property, some attorneys are very technical."

The opinion of Mr. Trammell on the title was, without objection on the part of appellant, introduced in evidence. Among other things, that opinion states that:

"The second call is omitted from the deed at page 2 of the abstract 3202. This should be checked against the record, and if such omission be not error on the part of the abstractor, the original deed should be secured and rerecorded if correct; if not correct, a correction deed should be secured, if possible.

"At page 2 next above mentioned, a vendor's lien is retained to secure a $6,000 note executed by. * * * This lien was extended July 2, 1919, as to a balance of $4,000. The lien, therefore, exists in favor of Holland and Stephens to secure the payment of this $4,000. (The contract between the parties provides that this lien shall be assumed and paid by Cockrell.)

"In the extension contract last mentioned it it recited that W. L. Tate had paid $2,000 on the principal of $6,000 note originally executed by Small. Tate, on November 15, 1918, had conveyed the property to A. F. Drysdale, retaining a vendor's lien to secure the payment of the $6,000. The property is, therefore, subject to a lien in favor of Tate for the $2,000 paid by him, which he can now enforce. * * * A release from Tate should be secured, recorded, and abstracted.

"The direction is left out of the third call in the deed at page 9 of abstract 5647. While this defect would not be material, inasmuch as the call runs with the railroad right of way, we suggest that the abstract be checked against the record for possible error, and if such is a clerical error on the part of the abstractor that a correction thereof be made.

"There should be satisfactory evidence, by affidavit of responsible person cognizant of the facts, showing whether the property was the homestead of Lawrence Kirk when he conveyed on May 3, 1913, as shown by page 13 of abstract 5862; and whether the property was ever the homestead of E. C. Hughes (see page 18 of abstract 6211); if so, special warranty deeds from Lawrence Kirk and Hughes and their respective wives should be secured.

"In view of the instrument abstracted at page 18 of abstract 16211 and the subsequent suit between Hughes and Kirk, Hughes should deed whatever rights he may have.

"J. E. Kirk was by the probate court of Tarrant county appointed executor of the estate of J. C. Kirk at page 2 of abstract 16503. The will at page 3 also names him as executor. However, he qualifies by executing a bond and oath as administrator (see pages 4 and 5) and as administrator deeds the property at page 12 of abstract 16503 to W. L. Tate, although the order recites his application as executor and he is ordered to sell as executor. Furthermore, the land was not sold for cash or on credit as provided in the statute, but an exchange was made thereof for 135 acres of land in Hamilton county, the executor giving his notes with a lien against such 135 acres for $843, although the order only authorized the giving of notes for $800. Under the law an implied lien would exist against this property to secure the estate of J. C. Kirk against failure of title to the land deeded by Kirk to the executor, as well as to secure the conveyance from Tate, the abstract not affirmatively showing such conveyance to have been made other than by recitation in the deeds; this lien would have to be released in any event by J. C. Kirk's devisees. In addition to all this, the property was the homestead of J. C. Kirk at the time and not ordinarily subject to sale by the administrator or executor. For these reasons it will be necessary to secure proper proof of heirship of J. C. Kirk, deceased, and a deed from all his heirs. His wife, Mrs. Elsa Kirk, should also join in this, since the acknowledgment on her deed at page 14 of abstract 16503 is defective and the field notes of the deed are also incorrect in several particulars. * * *

"The deed at page 19 of abstract 16503 is defective in that the third and fourth calls seem to be mixed. A correction deed from Tate and wife should be secured.

"Any deed which you take should be made by A. F. Drysdale and Effie Drysdale, his wife."

The defendant, Tate, testified to the effect that he had for more than five years held and been possessed of the property; that no one had ever asserted a title thereto; and that his title had several times been approved by well-known and reputable attorneys.

As before stated, the abstract itself was not offered in evidence, but on the submission it was stated by counsel that it was present in court at the time of the trial, and the trial discloses no objection of any kind to the testimony of Mr. Trammel as to the state of the title.

The following is appellant's first assignment of error which is made the basis of his contentions of this appeal, to wit:

"The court erred in rendering judgment in favor of the plaintiffs for any sum of money for commissions alleged to have been earned by them, because the said judgment is unsupported by the evidence introduced in the trial of said cause, in that the burden of proving a defective title to defendant's land as a reason or justification for the proposed purchaser's refusal to consummate the contract secured between the defendant and Cockrell and wife was on the plaintiffs, and the record in this case shows no sufficient or competent evidence that defendant's title to the land described in plaintiff's petition was materially defective."

Appellant assumes, by his able counsel, that the contract between the parties was but an option on the part of J. E. Cockrell and not an absolute contract to purchase

the Fort Worth property, enforceable by specific performance, and hence contends, quoting from his brief, that:

"The evidence in part indicating the title was good, and in part indicating the title was more or less defective, a clear issue of law was thus presented to the court, and it could not be properly and legally determined by him except by an examination of the instruments composing the chain of appellant's title. In other words, it could not be determined by the court either from the opinion of layman or lawyers, but could only be determined by a direct investigation of the muniments of title about which the layman and expert witnesses testify, and on which they based their expressed diverse opinions both verbal and written. The court could not accept from either the layman witness the opinion as to the title or the opinion of the attorneys as to the validity of the title. The court was confronted with the decision and determination of the issue of law and he could not accept the opinion of layman or lawyers as to the legal issue. The court in investigation of the documents on which the lawyer had based his written opinion may have come to a different conclusion and may have found the title free of material defects," etc.—citing authorities of which those most nearly in point are the cases of Brackenridge v. Claridge & Payne, 91 Tex. 527, 44 S. W. 819, 43 L. R. A. 593, and Taylor v. Davis (Tex. Civ. App.) 234 S. W. 104.

[1] The above cases are authority for the proposition that brokers suing for a commission, and who have procured a contract amounting to an option only, have the burden of proof to show that the title of the vendor is in fact defective, where it appears that the ground of the optionee's refusal to purchase is only that of a defect in the vendor's title. While no authorities have been cited in support of appellant's contention that the contract now under consideration is but an option, we are nevertheless inclined to that view of the contract on the authority of Moss & Raley v. Wren, 102 Tex. 567, 113 S. W. 739, 120 S. W. 847; Redwine v. Hudman, 104 Tex. 21, 133 S. W. 426; Dodge v. Lacey (Tex. Civ. App.) 216 S. W. 400; Crum v. Slade & Bassett (Tex. Civ. App.) 154 S. W. 351; Rankin v. Grist, 61 Tex. Civ. App. 484, 129 S. W. 1147.

We again refer to that part of the contract under consideration, above quoted, and which is to the effect that, should J. E. Cockrell fail to make the improvements designated in the contract within the time agreed upon, then the Jim Wells county land should be forfeited to the first parties and the contract become "null and void and the deed executed by first parties and presented herewith shall be returned to them," etc. This provision is perhaps susceptible of the construction that in the event of Cockrell's failure to make the improvements within the time agreed upon, the contract automatically becomes void and of no further effect,

and that the only remedy or measure of damages to which the parties of the first part would be entitled would be the Jim Wells county land, and that hence the only penalty to which Cockrell, under the contract, could be subjected, would be that forfeiture. If so, he could either at his pleasure fulfill his contract of purchase or refuse to make the improvements and end the contract, suffering a loss in the transaction of the Jim Wells county land only, and hence come within the decisions last mentioned.

[2] So, if appellees' reliance for their right to recover commissions rested alone upon the contract under consideration and the fact that Cockrell had failed to consummate the sale, we would, under the authorities last cited, be inclined to hold that they had failed to show a right to recover commissions, for it is well established by numerous authorities that a broker employed to find a purchaser for land must procure one who actually completes a purchase upon terms satisfactory to the vendor, or secure from a proposed purchaser who is ready, able, and willing to buy, upon terms acceptable to the vendor, an enforceable contract in writing to purchase. For the purposes of our conclusion, therefore, we will assume that the contract under consideration is but an option.

[3] It does not follow, however, that appellees were not entitled to their commissions. Appellant in the contract agreed to furnish an abstract of title. It is to be implied that the abstract should show good title in appellant. Indeed, he asserted that the title was good, but the evidence undoubtedly is sufficient to show that the reason Cockrell failed to complete the purchase was not because of any privilege or option that he might have under the contract to forfeit the Jim Wells county land and thereby escape further consequence, but because appellant's title was defective. Under such circumstances, it was immaterial that the contract was optional. The case of Hamburger & Dreyling v. Thomas, 103 Tex. 280, 126 S. W. 561, seems decisive of that question. In that case it was said, among other things, in an opinion written by Mr. Justice Williams, that—

"The chief ground of defense is * * * that the writing copied in the opinion of the Court of Civil Appeals, which was executed by the defendants and Baker, did not bind the latter to take the property, but left to him the alternative, even if he should approve the title, either to take it or to forfeit the $1,000 deposited. There would be more force in this if the title had proved satisfactory and Baker had exercised his right to recede from the trade by forfeiting the money deposited. In such case there would have been neither a willingness to buy nor an enforceable contract to buy, one or the other of which conditions would be essential to the broker's right to compensation. But the latter condition is not essential

where the first exists and the sale is defeated by the owner of the property. The question whether or not the plaintiff performed the service called for by the contract, is not wholly dependent upon the writing executed between the owners of the property and the proposed purchaser. The fact that the latter really was willing and able to buy and would have bought, notwithstanding he was at liberty not to do so, had he not been prevented by the defendant's failure to produce proper evidence of title must be regarded as controlling and as dispensing with the necessity of a binding contract to purchase which might otherwise have existed. The case differs from those in which there is no evidence of the rendering of the service by the broker but the granting of an option to the so-called purchaser, in the fact that a purchaser was found by plaintiff, a sale to whom was prevented only by the fault of the owner."

In a similar case, the opinion by Judge Williams was in part quoted and applied in an opinion written by the late lamented Chief Justice Huff of the Amarillo Court of Civil Appeals. See Henderson & Grant v. Gilbert, 171 S. W. 304. See, also, the case of Slade & Bassett v. Crum, 193 S. W. 723, where it was said, among other things, in an opinion written by Mr. Justice Hall of the Amarillo Court, that even though the contract there under consideration "be held to grant an option, * * * nevertheless, if the optionee is ready, willing, and able to take the land, and would have consummated the deal but for the defect in the title shown by the abstract furnished him by the seller, the brokers are entitled to their commission," again citing the case of Hamburger & Dreyling v. Thomas, supra.

[4] It only remains to determine whether appellees discharged the burden of proof cast upon them under the decision of Brackenridge v. Claridge & Payne, supra. We conclude that they did. It is true the original muniments of appellant's title were not offered in evidence; presumably they were in his possession and in his power alone to produce. This he failed to do. He furnished the proposed purchaser, Cockrell, an abstract of title, which he was obligated to do under the terms of the contract and which presumably presented the usual brief notations of the several muniments constituting his title, and while the abstract appears not to have been offered in evidence, the attorney who had been employed to pass upon the abstract, and who had examined it, was permitted, without objection, to testify and state in his testimony what the particular defects were. While the opinion of the attorney may not, as appellant now contends, have constituted competent evidence of a defective title, yet not only was the opinion read in evidence without objection, but the attorney was permitted without objection to go further and testify while as a witness to actual defects found, and we

248 S.W.—51

do not find that such testimony indicating the actual defects of title was contradicted further than may be implied from appellant's general statements while a witness that he had never been sued for the recovery of the premises in controversy, and that the title had been examined and passed on more than once by reputable attorneys. Such general statement, we think, fails to present specific contradiction of the specific defects pointed out by the attorney who examined his title. Under such circumstances, we think the testimony of the attorney was competent. It was held in the case of Daniel v. Harvin, 10 Tex. Civ. App. 439, 31 S. W. 421, in an opinion by Mr. Justice Williams, that even hearsay evidence admitted without objection and uncontradicted should be treated by the court as competent, the reason being given for this rule is that, had objections been made, its place might have been supplied by other testimony. To the same effect may be found the decision in the case of Gray v. Fussell, 48 Tex. Civ. App. 261, 106 S. W. 454. See, also, Coulter v. G., C. & S. F. Ry. Co. (No. 10059) 248 S. W. 788, by this court in opinion by Mr. Justice Dunklin, not yet (officially) published.

Under the rules indicated by the authorities cited, we think it cannot be said that the court below was without evidence to support the conclusion that must be imputed to his judgment that appellant's title was not good, or at least was such as to justify Mr. Cockrell in rejecting it and declining to complete the purchase.

We conclude that all the assignments of error and propositions thereunder should be overruled and the judgment affirmed.

### On Motion for Rehearing.

Appellant files a motion to dismiss this appeal, or, in the alternative, for a rehearing. The motion to dismiss the appeal is predicated upon the contention that the judgment below fails to dispose of A. F. Drysdale and wife, Effie Drysdale, named as parties defendant in the suit. In our opinion on original hearing no notice was taken of the fact that the judgment failed to specifically discharge these parties, for the reason that it was admitted that the appellant, Tate, was the real owner of the property in question and that the legal title only was held by Drysdale. Furthermore, the plaintiffs' original petition, upon which the trial proceeded, in its opening paragraph contained this statement:

"Plaintiffs dismissed their cause of action against A. F. Drysdale and wife, Effie Drysdale, without prejudice."

So that, as stated, we proceeded on the assumption that these parties were in fact no longer parties to the action. But if by any possibility it could be said that we were in error in so ignoring these parties, the error

has been remedied by a supplemental transcript with a nunc pro tunc order of the trial court which recites that Drysdale and wife in fact had been dismissed by the order of the court, but which order had, by inadvertence, been omitted from the court's minutes, which were so corrected by a nunc pro tunc order as to show the formal dismissal of the parties.

In that part of the motion before us relating to the subject of a rehearing, it is insisted that we erroneously stated in our original opinion that, while the abstract of title examined by Mr. Trammel was not offered in evidence, "on the submission it was stated by counsel that it was present in court at the time of the trial." The recollection of the members of this court at this time is not sufficiently definite to insist that the statement embodied in the question is correct, and in view of the unchallenged, positive assertion of counsel for appellant that no such statement was made, the statement will be withdrawn from our opinion as originally written. In other respects, however, we find no sufficient reason to alter our conclusions.

The motions to dismiss the appeal and for a new trial are overruled.